## CHARLES ALFF & CO. v. WILLIAM RADAM.

### No. 6929.

1. **Trade Mark.**—What constitutes a trade mark is a question of law for the court. Whether a trade mark has been so constituted, and if so constituted whether there has been an infringement of it, are ordinarily questions for the jury.

2. **Same—Words in Common Use.**—Words in common use are common property of the people, and no exclusive right to the use of such words can be acquired by adopting them as a trade mark, unless they be used in an arbitrary or fanciful sense, and not in their ordinary signification.

3. **"Microbe Killer."**— Radam testified that "the words 'microbe killer'" mean "fungus destroyer"—that the word microbe was intended to mean fungus; that in using the name "microbe killer" he intended to convey the meaning that it kills those things, and that the name "microbe killer" means destroyer of microbes. The words are English words in common use, of known signification and fixed meaning, which meaning is that employed by Radam upon his own testimony, and they are not used by him in any arbitrary or fanciful sense; the words *microbe killer*, therefore, as used by Radam could not constitute a trade mark.

4. **Fraudulent Use of Device not a Trade Mark.**—The fraudulent use of a device or mark not a trade mark to the injury of another in his business gives cause of action to the party injured by the fraud.

5. **Imitation of Device or Label.**—Where the label or device used by the defendant is manifestly and entirely dissimilar, so that a person of ordinary prudence and caution could not be deceived in buying one for the other, no action would lie for fraudulent imitation, etc.

APPEAL from Travis. Tried below before Hon. J. C. Townes.

This suit was brought February —, 1888, in District Court of Travis County, by Radam, the appellee, against Alff & Co., for alleged infringement of the trade mark *"Microbe Killer"* used by plaintiff in his business as proprietor and dealer in a valuable medicine, by the use by defendants of the device *"Microbe Destroyer"* used by the defendants as a label upon a fraudulent imitation of Radam's Microbe Killer.

Suit also charged defendants with simulating the form and manner of putting up the medicine, by which persons desiring to buy Radam's Mi-

crobe Killer were led to buy the imitation *Microbe Destroyer;* and also for damages inflicted upon the business of plaintiff by the defendants circulating false reports about the identity of the *medicines*, etc. Plaintiff obtained an injunction.

The pleadings, as collated in the brief of appellee, are substantially as follows:

Plaintiff alleged: "1. That in 1886, in Austin, Travis County, Texas, appellee invented a certain medicine or curative liquid for the cure and prevention of diseases, and gave to it the name of 'Microbe Killer.'

"2. That appellee is now and for a long time has been and at the time of and before the commission of the wrongs and grievances complained of was the manufacturer of said medicine, which he put up and sold to the public and purchasers thereof in brown or gray jugs of one gallon capacity, each labeled with his own proper labels, trade mark, and device, all of which were invented, composed, and adopted for that purpose.

"3. That by reason of appellee's knowledge and care in its manufacture and its good and useful qualities it became widely known as a good and useful medicine, commanded extensive sales, was of high commercial value, and a source of great profit to him.

"4. That his medicine was known to the public and the consumers thereof by the name of 'Microbe Killer' and by appellee's own devices, trade mark, labels, and circulars, and the manner and form in which it was put up and offered for sale.

"5. That notwithstanding these facts, appellants well knowing the same, willfully, wrongfully, and unlawfully disregarding the rights of appellee therein, did on December 1, 1887, wrongfully, willfully, and unlawfully prepare and offer for sale and sold at the city of San Antonio, in the county of Bexar and State of Texas, and at the city of Austin, Travis County, Texas, and elsewhere throughout said State, a medicine in imitation of appellee's medicine, with intent to deceive and defraud the public and the purchasers and consumers thereof, and to injure and defraud appellee of his rights; appellants putting up and selling their spurious medicine in similar manner and form to that in which appellee puts up and sells his medicine, the manner and form in which appellants put up and offer for sale their spurious medicine being in brown or gray jugs of one gallon capacity, and marked with labels, devices, and trade marks used, adopted, and invented by appellee and used upon his medicine. That appellants gave to their medicine the name of 'Microbe Destroyer,' and offer for sale and sell the same by that name.

"6. That the labels, devices, and trade mark of appellants are fraudulent counterfeits and imitations of the labels, devices, and trade mark of appellee, and of this appellants have had and now have full knowledge.

"7. That said imitations and counterfeits are calculated to deceive the public and the purchasers and consumers of appellee's medicine, and that

said imitations have actually misled and do now mislead numerous and divers persons into the fact of purchasing the spurious medicine of appellants, believing that they are purchasing the medicine of appellee.

"8. That appellants' medicine is a greatly inferior medicine to the medicine of appellee, and that by reason of such the general esteem and reputation of appellee's medicine has been greatly injured.

"9. That before the commencement of this action appellee repeatedly requested appellants to desist from putting up and selling their said medicine in the manner and form aforesaid, and from simulating, pirating, imitating, and infringing the labels, devices, and trade mark of appellee, but to such they pay no heed and do and continue to do as they have done heretofore.

"10. That by reason of such, appellee had been damaged $30,000."

Prayer was made for citation, for a temporary writ of injunction, and on final trial for judgment for the damage claimed, and that the writ of injunction be made perpetual.

Defendant Charles Alff by second amended original answer pleaded general demurrer, and special exceptions:

"Half of the petition is a declaration on a trade mark which on the face of the petition is shown to be no trade mark, and the subject of the alleged trade mark is not susceptible of being a trade mark; and further, the words are merely English words, descriptive of the quality or nature of the medicine, not implying ownership, manufacture, or place of manufacture.

"It appears from the face of the petition and exhibits thereto that there has been no infringement, no imitation, no deception on the part of defendants, their alleged trade mark or copyright label or circular being wholly dissimilar to plaintiff's, and not susceptible of confusion with plaintiff's alleged and shown label and trade mark."

And answered on the facts:

"1. By general denial.

"2. That the body of appellee's medicine was an old compound which had long been in use by many persons for the destruction of insects, bugs, and other vermin in horticulture, floriculture, and such like industries; that appellee may have added something to this, but appellants did not know such was the case. That this long used compound and decoction by general use or use by many persons became subject to general and unrestricted use by the public long before appellee undertook to appropriate it to his own use. This old compound appellant Alff, while in the employ of appellee, made and used in appellee's hot house and other service on his flowers at a time when, as appellant Alff believes, appellee was wholly ignorant of the virtue of the compound, and on this base appellee may by introducing new ingredients have builded and made his medicine; that appellant's medicine is made with more cleanliness and care.

"3. It is true that appellant for nearly a year has manufactured and

sold this medicine, but his jugs were not uniform in shape or color, nor was the trade mark placed uniformly on one side of the jugs, but was pasted on the side most handy to paster. The jugs were not uniformly sealed over the cork or stopper with one colored substance but was of various colors.

"4. Appellant admits the construction of the alleged circular and its circulation, but it was in the English language.

"5. That the trade mark and copyrighted circular (exhibit A) does not accord with the copyright taken out by appellee. The alleged copyright is of the words "The greatest discovery of the age, Wm. Radam's Microbe Killer," whereas the circular and trade mark is seven pages long, with almost if not more than 500 words to the page, in pamphlet form, and the copyrighted words, if copyrighted they be, nowhere appear in the headlines as attracting words on first page.

"6. Appellant admits there has been demand for the medicine of the character sold by appellee and that considerable quantities have been sold, but denies that the demand has been so much for the Radam brand of said medicine as for the medicine itself.

"7. About appellee's profits appellant says he knows nothing.

"8. Appellant denies all confederacy or combination between himself or with others to injure, defraud, or oppress appellee. He denies that he has knowingly, willfully, fraudulently, or otherwise imitated or sought to imitate appellee's medicine, his alleged trade mark, or his alleged copyrighted circular. Whether appellant's medicine is inferior to appellee's or not he can not say, not knowing of any, if any, new ingredients appellee has introduced into the well known and long used compound which constitutes appellant's medicine. He denies he has sought to catch appellee's trade or to win his customers from him; on the contrary he has followed a fair, legitimate business. It may be and probably is competition with appellee, but if so it is not carried on by fraud, imitation, through confederacy, combination, or otherwise wrongfully.

"9. Appellant denies that it was his intention to defraud appellee or deceive the public in the sale or recommendation of his medicine; on the contrary, has contrasted his medicine with appellee's to purchasers and claimed appellant's was the best.

"10. He denies he ever at any time packed his medicine or now packs it to resemble appellee's further than this: he used a gray jug of one size, shape, and color, sealed some red and some black, pasted his label, which in no way in color or size resembles appellee's.

"11. He denies his medicine is spurious; that it is a compound decoction well known for a long time to many persons and in use a long time by many persons, of great destructive power to certain animal germs, and used in prescribed ways, and of great curative power for diseases in the human system.

"12. That it would be gross carelessness for any person wishing to

buy Microbe Killer or Destroyer to mistake appellant's medicine when labeled and packed for appellee's medicine labeled and packed.

"13.    Appellant admits he had constructed, printed, and circulated a circular advertising his business, to bring his medicine to the notice of the public as alleged in the bill, but he denies it even approximately resembles or could be taken for appellee's circular.

"14.    He denies imitation of appellee's trade mark or circular remotely; he denies it is probable, indeed hardly possible, for the public or any ordinary person to be deceived by taking appellant's packed and labeled medicine for appellee's; denies that it has been his intention to deceive the public or that the public have been deceived into the purchase of appellant's, believing it was appellee's. He admits the notice and protest alleged against his using appellee's jugs and labels, but he disregarded it. The notice being to cease the use of appellee's jug and label, feeling he was using neither, he disregarded it."

And that the injunction be dissolved, and for costs.

By way of cross-bill answered as follows:

"1.    Appellee well knew he was perfectly ignorant of the existence of the nature, kind, and character or virtue of what he styled 'Radam's Microbe Killer' until he learned from appellant how to mix the ingredients and produce the compound.

"2.    There was no secret and no great mystery and certainly no new discovery on part of appellee when he commenced the manufacture of this medicine.    To appellant's certain and personal knowledge, the base of the compound if not every ingredient in the compound had for years been used by gardeners and such like producers in Germany, France, and in the United States.

"3.    Appellee, appellant believes, neither in law nor fact has a shadow of claim to the exclusive sale of this compound.

"4.    That appellee has time and again slandered appellant's medicine and libeled appellant, charging him in written letters to various persons, falsely stating of, about, and concerning appellant, both as an individual and of his company—Charles Alff & Co.—while it existed:

"(1)    That Charles Alff & Co. were in the employ of the Capital Microbe Destroyer Company.

"(2)    That they combined with said company to imitate his medicine, and conspired to deceive and impose upon the public by selling their medicine as his (appellee's) medicine.

"(3)    That the medicines of Charles Alff & Co. were spurious, and if used would produce injurious results.

"(4)    That Alff & Co. were frauds—were tools of the Capital Microbe Destroyer Company.

"(5)    And in other ways and by other means, such as the bringing of malicious suits, charging appellant and his company with pirating his

trade mark and his circular as pretendedly copyrighted; that he and his company were conspirators, in confederacy with others to infringe his legal rights by claiming to sell spurious compounds as valuable medicines manufactured by appellee.

"All of this was false, unjust, malicious, and oppressive, and well known by appellee so to be.

"Its legitimate effect was to damage appellant in character and drive him out of a legitimate and profitable business, and it had that effect, to his injury of $10,000.

"5.   Appellee in his actings and doings was moved by hate, malice, and revenge toward appellant, and appellant asks as damages $20,000.

"6.   Appellant for further answer, by way of cross-bill to appellee's case as made by his supplemental petition, said:

"(1)   That after appellant Alff had answered to appellee's original petition, on April 17, 1888, appellee still persisted in this suit.

"(2)   That on May 11, 1888, by judgment of this court in case No. 8566, styled William Radam v. The Capital Microbe Destroyer Company et al., the right of appellee to the words " Microbe Killer," or any of the words used in exhibit A, was denied, and it is here pleaded in bar of appellee's right to use of all matter set forth by him.

"(3)   That the false claim of appellee that he was the discoverer of said medicine, and that he had copyrighted said label or registered it, renders the same fraudulent and destroys all claim of exclusive right to use same.

"7.   The copartnership of Charles Alff & Co. was dissolved thirty days before appellee filed his original petition in this cause.

"8.   Appellant Alff continued, however, to manufacture and sell his medicine after dissolution of partnership.   The direct result of this suit and one in the Federal Court at San Antonio was to cast doubt on appellant's medicine and his integrity as a man, and cause his customers to withdraw from him, and decrease his trade and lessen his profits.

"9.   Appellant, however, by fair conduct and excellency of his medicine, began to regain his lost custom and extend the area of his sales, and had hopes of recovering from the damage and injury done him.

"10.   That on the 5th day of July, 1888, appellant was doing a fairly good business, was making a profit $100 per month, and his business was rapidly increasing.

"11.   Appellee becoming advised of this, actuated by malice and hate, conceived the idea to ruin appellant, sued out an injunction against him compelling him by order of the judge of the District Court of Travis County, of date 5th day of July, 1888, to cease and suspend business, which injunction was served on the 6th day of July, 1888.

"12.   Appellant made a motion to dissolve the injunction, but hearing was at instance of and by consent of appellee postponed until his return,

but appellee did not return until the approach of the present term of court, when appellant's business by this suspension was ruined.

"13.   However, obtaining said injunction by oath to what was not facts, appellee gave bond, with John McDonald and Geo. O. Evans as his sureties, in the sum of $1000, a sum, however, wholly inadequate to indemnify appellant in his losses.   This bond was dated the 3d day of July, 1888.

"14.   That when the injunction was served upon him appellant was doing a business giving him a profit of $300 per month, which he had to suspend, to his loss $10,000.

"15.   That since service of said injunction his business has not only been suspended, but he has lost his customers, his whole business disorganized, his time has been lost, he has been injured in his character, his medicine decried, maligned, and driven out of market, and he will be compelled to commence anew with a slandered, maligned, and libeled medicine."

Appellant asked that the injunction be dissolved and he have judgment for costs; that he have judgment for $1000 actual damages against appellee and John McDonald and George O. Evans, his bondsmen; that he have judgment against appellee for $15,000 actual damages and $25,000 punitory damages.

Appellee made a motion to strike out this second amended original answer.

Appellee filed a first supplemental petition to second amended original answer of appellant, which it is not necessary to set out.

The testimony was voluminous, and upon all the issues made by the pleadings.

The examination of plaintiff Radam gives the genesis of his trade mark. From the cross-examination the following extract is given:

"I gave my medicine the name of Microbe Killer.   I adopted a label for the advertisement and sale of my medicine.   Before I got out the label I just simply sold the medicine under the name of Microbe Killer."

Q.   "You have finished your explanation, now answer my question: Where did you get the words 'Microbe Killer?'"

A.   "I read in the books, for instance, micrometer, the very smallest little thing; micro folia, a small leaf.   I get the word microbe from anywhere in medical books; and in German the word microbe, I think, is the same as in English.   I know there are four or five words with the same meaning to it.   I think I have seen the word microbe in the Scientific American, but I don't know what book I have seen it in.   I think the first time I heard the word microbe was three or four years ago, when the cholera was in Italy.   At the time I adopted the word microbe it was used only in medical papers, I believe, like the Scientific American; it was not a word in common use.   I think, maybe, it was in the associated press

dispatches throughout the world when the cholera was in Italy. I suppose I saw it in the associated press dispatches. Microbe is like bacteria; we use the words microbe, bacteria, and fungus all in the same way. I think microbe is a Latin word. I know exactly what microbe means; it means nature's destroying element."

Q. "But what is microbe?"

A. "Microbe is simply impure air. Pure air is oxygen and impure air is nitrogen."

Q. "So that is exactly what the word microbe means?"

A. "Of course that is what microbe means."

"I adopted the ordinary gallon jugs of this shape because I could better control it; because if I had my medicine in glass the whole world could conceal it. When I put it in a jug I can control it better; because, as it was an invention, I wanted to see if any fraud was going on; for if any drug store would be selling any kind of imitation I could find it out if in a jug. I knew that it was an unusual invention and would bring out a great many infringers, and I knew if I put it in a glass it would be something that would be sold in every drug store, and I could not keep up with the infringements or keep them from selling my medicines; so if I ever see medicine in a jug in a drug store I know there is something the matter, and I look into it right away and can control my business. That is the reason I adopted the jug. I named the jug in my application for trade mark, which covers jugs, boxes, bottles, or anything. I put the jug in as a part of my application for a trade mark. * * * The shield with the name is my trade mark. The trade mark is composed of the skeleton and the man with a club. My trade mark was 'Microbe Killer.' The words 'William Radam's Microbe Killer' is an addition. 'Microbe Killer' is the trade mark."

Plaintiff's attorney hands defendants' attorney the trade mark of plaintiff. It is handed to the witness.

Q. "Is that your trade mark?"

A. "Yes. When I adopted the words 'Microbe Killer' I knew I must have a name and so I adopted that."

Q. "Did you mean that your medicine would kill the microbes?"

A. "No, sir, not at all; I just gave the name to have a name."

Q. "Why did you adopt 'microbe?'"

A. "Because I knew that microbes and fungus and bacteria were the cause of fermentation."

Q. "Then the name 'Microbe Killer' means 'fungus destroyer.'"

A. "Yes, sir."

Q. "Means fungus destroyer in vegetable life?"

A. "Yes."

Q. "The word 'microbe' was intended to signify fungus?"

A. "Yes."

Q. "Then in using the name 'Microbe Killer' you intended to convey the meaning that it kills these things?"

A. "I believe so, and I believe that experiments show it. I talked with Judge ―――― about it, and after we had conversed the matter over I thought the proper words would be 'Microbe Killer.'"

Q. "What does that mean?"

A. "It means destroyer of microbes. * * * I do not claim to be the inventor of the word microbe. The word microbe means something in English. I don't claim to be the inventor of the word 'killer;' it is an English word that is used every day; but I believe I was the first one that ever put that word on a medicine."

The opinion sufficiently states the other facts involved in the decision. The demurrer and special exceptions to the petition were overruled. On the trial the jury found a verdict for plaintiff Radam with one cent damages. Judgment was entered for plaintiff and perpetuating the injunction. Alff & Co. appealed.

*Walton, Hill & Walton,* for appellants.—Plaintiff's petition did not show a case good in law or equity, and defendants' exceptions thereto should have been sustained. Partridge v. Menk, 47 Am. Dec., 283, 284 (notes), 287 (subdiv. 1), 292 (subdiv. 7), 295 (subdivs. 10, 12), 297–299; Chemical Works v. Wuth, Law. Rep., 44, and notes; Trade Mark Cases, 100 U. S., 82, *et seq.;* Manfg. Co. v. Trainer, 101 U. S., 54, 55; Filley v. Fassett, 100 Am. Dec., 279, authorities and notes; Hostetter v. Fries, 17 Fed. Rep., 621, 622; Canal Co. v. Clark, 13 Wall., 323.

*Dowell & Posey,* for appellee.—1. Appellee's petition did show a good case in law, and especially for the relief sought, and appellants' objection thereto was properly overruled. 1 Estee's Plead., sec. 2827; Browne on Trade Marks, chap. 7, secs. 33, 58, 228, 385, 43, 309, 328, 449, 388, chap. 14, secs. 325, 622, 661; 6 Wait's Act. and Def., sec. 4; Conrad v. Brewing Co., Price & Steuart's Am. Trade Mark Cases, 324; Marsh v. Billings, 7 Cush., 322; Enoch Morgan's Sons Co. v. Schwachoffer, Price & Steuart's Am. Trade Mark Cases, 63; Soap Co. v. Thomson, Price & Steuart's Am. Trade Mark Cases, 1033; Gail v. Wackerbath, Price & Steuart's Am. Trade Mark Cases, 1096; Actien Gesellschaft Appollinaris Brunnen v. Somborn, Price & Steuart's Am. Trade Mark Cases, 61; Sohl v. Geisendorf, 1 Wils. (Ind.), 60; Seixo v. Provezende, Law R., 1 Ch. App., 192; Fettridge v. Wells, 4 Abb. Pr., 144; Moxie Nerve Co. v. Baumbach, 32 Fed. Rep., p. 205; 21 Am. Law Jour., 1040; Schrauder v. Beresford & Co., Browne on Trade Marks, sec. 449; India Rubber Co. v. Rubber Co., Price & Steuart's Am. Trade Mark Cases, 180; Caire's Appeal, Price & Steuart's Am. Trade Mark Cases, 116; Dreydoppel v. Young, Price & Steuart's Am. Trade Mark Cases, 423; Liggett & Meyer v. Heynes, Price & Steuart's Am. Trade Mark

Cases, 898; Enoch Morgan's Sons Co. v. Troxell, Price & Steuart's Am. Trade Mark Cases, 140; Hier v. Abrahams, Price & Steuart's Am. Trade Mark Cases, 438; Ex Parte Farnum & Co., Price & Steuart's Am. Trade Mark Cases, 409; Collin v. Card Co., Price & Steuart's Am. Trade Mark Cases, 262; Button Co. v. Anthony, Cowell & Co., Price & Steuart's Am. Trade Mark Cases, 1105; Bradley v. Norton, 33 Conn., 157; Hostetter v. Vowinkle, 1 Dall., 329; Wolton v. Crowly, 3 Blatch., 66, 440; Filley v. Fassett, 44 Mo., 168; Talcott v. Moore, 6 Hun, 106; Blackwell v. Wright, 73 N. C., 310; Lockwood v. Bostic, 2 Daly, 521.

2. Appellee's case was not wholly on his trade name and mark, but on his form of packing, and also for fraud and deceit in appellant going about and telling purchasers his medicine was the same as appellee's, that he had learned appellee how to make it; and it was proper for the court to submit the case to the jury in the way it did.

3. The verdict and judgment of the court are in accordance with the evidence, and if the court had construed the words and labels as contended it would have been in favor of appellee, and the verdict and judgment would have still been in his favor but for a much larger amount of damages, and appellant can not be heard to complain. Durham Tobacco Case, 3 Hughes, 157; Witherspoon v. Currie, L. R., 5 E. & I. App., 508; Ford v. Foster, L. R., 7 Ch. App., 611; McAndrew v. Bassett, 10 Jur. (U. S.), 550; Lee v. Haley, L. R., 5 Ch., 155; Seixo v. Provezende, L. R., 1 Ch., 192; Broham v. Bustard, 1 Hem. & M., 447; Browne on Trade Marks, secs. 216, 264, 274, 275; Davis v. Kendall, Cox's Am. Trade Mark Cases; Smith v. Sixbury, Price & Steuart's Trade Mark Cases, 558, 559; Gillott v. Esterbrook, 48 N. Y., 374; Newman v. Alvord, 51 N. Y., 189; Hier v. Abrahams, 82 N. Y., 519; Ex Parte Heyman, Price & Steuart's Am. Trade Mark Cases, 362, 363; O'Rourke v. Soap Co., Price & Steuart's Trade Mark Cases, 1043; Burton v. Stratton, Price & Steuart's Am. Trade Mark Cases, 673; 44 Mo., 168; Cox's Manual of Trade Mark Cases, 669; Manfg. Co. v. Spear, 2 Sandf., 597; Canal Co. v. Clark, 13 Wall., 322; Falkingburg v. Lucy, 35 Cal., 52; Browne on Trade Marks, sec. 216.

ACKER, PRESIDING JUDGE.—William Radam brought this suit against Charles Alff & Co., a firm composed of Charles Alff and Joe K. Heim, and against the members of the firm individually, to recover damages for alleged infringement of a trade mark and for injunction restraining the defendants from using the alleged infringing trade mark.

The trial by jury resulted in a verdict for plaintiff for one cent damages, and judgment was rendered perpetuating the injunction, from which this appeal is prosecuted.

The alleged trade mark of plaintiff consisted of the words "Microbe Killer," used in conjunction with a device, symbol, or illustration representing a man in the attitude of striking a human skeleton with a blud-

geon. The words and illustration are printed on a white paper label 8½ by 5½ inches in dimensions, with a red border around it, the illustration being printed in red ink while the name and directions for using are printed in black ink.

The alleged trade mark of the defendants consisted of the words "Microbe Destroyer," printed on a yellow paper label 4½ by 4¾ inches in dimensions, with a black border around it, but no device or symbol.

Appellants contend that the words "Microbe Killer" are words of definite meaning, in common use, descriptive of the quality, ingredients, or characteristics of the remedy put up and sold under that name, "and therefore not susceptible of being erected into a trade mark."

What constitutes a trade mark is a question of law for the court. Whether a trade mark has been so constituted, and if so constituted whether there has been an infringement of it, are ordinarily questions of fact for the jury.

In the case of Manufacturing Company v. Trainor, 101 United States, 54, it is said: "The limitations upon the use of devices as trade marks are well defined. The object of the trade mark is to indicate, either by its own meaning or by association, the origin or ownership of the article to which it is applied. If it did not, it would serve no useful purpose either to the manufacturer or to the public; it would afford no protection to either against the sale of a spurious in place of the genuine article. This object of the trade mark and consequent limitations on its use are stated with great clearness in the case of Canal Company v. Clark, 13 Wallace. There the court said, speaking through Mr. Justice Strong, that 'No one can claim protection for the exclusive use of a trade mark or trade name which would practically give him a monopoly in the sale of any goods other than those produced or made by himself. If he could, the public would be injured rather than protected, for competition would be destroyed. Nor can a generic name, or a name merely descriptive of an article of trade, of its qualities, ingredients, or characteristics, be employed as a trade mark, and the exclusive use of it be entitled to legal protection.' And a citation is made from the opinion of the Supreme Court of the city of New York in the case of the present complainant against Spear, reported in 2 Sandford, that 'the owner of an original trade mark has an undoubted right to be protected in the exclusive use of all the marks, forms, or symbols that were appropriated as designating the true origin or ownership of the article to which they are affixed; but he has no right to the exclusive use of any words, letters, figures, or symbols which have no relation to the origin or ownership of the goods, but are only meant to indicate their names or quality. He has no right to appropriate a sign or symbol which from the nature of the fact it is used to signify, others may employ with equal truth and therefore have an equal right to employ for the same purpose.'"

Words in common use are common property of the people, and no exclusive right to the use of such words can be acquired by adopting them

as a trade mark, unless they be used in an arbitrary or fanciful sense and not in their ordinary signification.   Browne on Trade Marks, sec. 161; Filley v. Fassett, 100 Am. Dec., 279.

On the trial the plaintiff testified that the words "Microbe Killer" mean "fungus" destroyer; that the word microbe was intended to signify fungus; that in using the name "Microbe Killer" he intended to convey the meaning that it kills those things, and that the name "Microbe Killer" means destroyer of microbes.

That the words are English words in common use, of known signification and fixed meaning, we think there can be no doubt, and that they were employed by the plaintiff in their ordinary and not in any arbitrary or fanciful sense is shown beyond question by the testimony of the plaintiff himself.   Under the authorities, *supra*, we think it quite clear that the words "Microbe Killer" as used by the plaintiff did not constitute a trade mark.

Notwithstanding plaintiff has no real or legal trade mark, if the defendants had intentionally simulated the peculiar device or symbol employed by plaintiff on his labels, and such simulation was calculated to deceive ordinarily prudent persons, and did deceive such persons, the plaintiff would be entitled to protection against the consequences of such deception, not because of his device or symbol being a trade mark in the legal sense of that term, but because of the fraud and deception practiced by the defendants upon the plaintiff and the public.

In this case, however, the labels used by the plaintiff and defendants respectively are so entirely dissimilar that we do not think it possible for any person of ordinary prudence and caution to have been deceived by defendants' label and thereby induced to buy their remedy when the purchaser desired and intended to buy the plaintiff's remedy.

Other assignments of error are immaterial and will not be discussed, as what we have said disposes of the case.

We are of opinion that the judgment of the court below should be reversed and judgment rendered here that appellee take nothing by his suit, and that he pay all costs of this and of the court below.

*Reversed and rendered.*

Adopted June 3, 1890.

MOTION FOR REHEARING.

*John Dowell,* for the motion.— 1. That the words "Microbe Killer" can be taken as a trade mark and applied to medicine, we refer to the following authorities:  Davis v. Kendal, 2 R. I., 566; Cox's Manual of Trade Mark Cases, Nos. 103, 281, holding "pain killer" good, the word "killer" here passed on being one of the words of appellee.   Smith v. Sixbury, Price & Stenart's Am. Trade Mark Cases, 557, holding "magnetic balm" good; Fulton v. Seller, 4 Brewster, 42, or Cox's Manual of Trade Mark

Cases, 279, holding "blood searcher" good; Funke v. Dreyfus, 34 La. Ann., 80, holding "Backer's stomach bitters" good; Reinhardt v. Spalding, 49 L. J. Ch., 28, W. R., holding "family salve" good; 6 Bear, 66, holding "medicated Mexican balm" good; 4 McLean, 516, holding "Chinese liniment" good; Caswell v. Davis, 58 N. Y., 223, holding ferro phosphorated "elixir of calasaya bark" good; Ex Parte Heyman, Price & Steuart's Am. Trade Mark Cases, 361, holding "invigorator" good; Shepard & Co. v. Stuart & Peterson, Price & Steuart's Am. Trade Mark Cases, 193, holding "excelsior" good; Hier v. Abrahams, Price & Steuart's Am. Trade Mark Cases, 438, holding "pride" good; Price & Steuart's Am. Trade Mark Cases, 904, holding "champion" good; Price & Steuart's Am. Trade Mark Cases, 474, holding "satin polish" good; Browne on Trade Marks, secs. 216, 264, 274, 275.

All of the words sustained in the above authorities are common words, or ordinary words of the English language. The distinction is this: if an ordinary word is used to denote the effect of the invention, and not the quality or nature, they can be appropriated.

The words pain killer denote the effect or action of the medicine, invigorator likewise, also blood searcher, magnetic balm, and the like, and are good trade marks, while sulphuric acid would not be, as any person would be authorized to use the word sulphur to any medicine into which it entered as an ingredient.

2. It is insisted that the two words together were first used by appellee; and though each one separate may have been used before, yet he is the only one who applied them together—designated their joint use; and such is new, novel, and valid. Words that are ordinary words when in use separately may become new and novel when used together, as in this case. Who ever used the words "microbe killer" jointly before appellee? No one. Newman v. Alvord, Cox's Manual of Trade Mark Cases, case 282; Burnett v. Phalon, Cox's Manual of Trade Mark Cases, case 277.

3. Words selected arbitrarily, not expressive of the quality or character of the article, and not previously appropriated by any other person to designate a similar commodity, may be used as a trade mark for such article. Price & Steuart's Am. Trade Mark Cases, 1, 88, 559.

Mere words may become valid trade marks when they are merely arbitrary. Price & Steuart's Am. Trade Mark Cases, 6, 79, 103, 485, 672, 674.

Were not appellee's words "Microbe Killer" declared by him arbitrarily to denote his medicine? They are not descriptive of the nature or quality of the medicine, and have nothing to do with it in their separate, ordinary use, and nothing to do with it in their joint use except as arbitrarily selected and affixed to it by appellee for his business purpose. These joint words are a valid and legal trade mark.

4. In determining whether or not there is imitation the court will look to the whole package as offered for sale—the jug, label, color of medi-

cine, and the whole general appearance; and the court in this case erred in looking solely to the label and deciding there was no imitation. Price & Steuart's Am. Trade Mark Cases, 1, 2, 4, 12, 67, 70, 161, 175, 1036, 1096.

5. The word "microbe" is a new word, only of late coinage. It is not in Worcester's Unabridged Dictionary and supplemental edition of 1886, and neither is it in Webster's Unabridged Dictionary of 1890. I refer to these dictionaries to support me.

6. If the common words "pain killer," passed upon by two Supreme Courts (viz., 2 Rhode Island, 366; Canada West, Chan. Mowat, V. C. Cod. Dig., 236), and held to be a fancy name indicative of the inventor's article, then why not microbe killer? If pain killer are fanciful words so adjudged, then why are not "microbe killer?"

7. Labels may be quite different, yet if the general appearance of the whole thing when put up is the same, so that the public are deceived thereby, using ordinary care, then the imitation is complete. The Electro Silicon v. Levy, Price & Steuart's Am. Trade Mark Cases, 370; Smith v. Sixbury, Price & Steuart's Trade Mark Cases, 558, 559; Gillott v. Esterbrook, 48 N. Y., 374; Newman v. Alvord, 51 N. Y., 189; Hier v. Abrahams, 82 N. Y., 519; Ex Parte Heyman, Price & Steuart's Am. Trade Mark Cases, 362, 363; O'Rourke v. Soap Co., Price & Steuart's Trade Mark Cases, 1043; Burton v. Stratton, Price & Steuart's Am. Trade Mark Cases, 673; 44 Mo., 168; Cox's Manual of Trade Mark Cases, 669; Manfg. Co. v. Spear, 2 Sandf., 597; Canal Co. v. Clark, 13 Wall., 322; Falkingburg v. Lucy, 35 Cal., 52; Browne on Trade Marks, sec. 216; Durham Tobacco Case, 3 Hughes, 157; Witherspoon v. Currie, L. R., 5 E. & I. App., 508; Ford v. Foster, L. R., 7 Ct. App., 611; McAndrew v. Barrett, 10 Jur. (U. S.), 550; Lee v. Haley, L. R., 5 Ch., 155; Seixo v. Provezende, L. R., 1 Ch., 192; Broham v. Bustard, 1 Ham. & M., 447.

8. Appellee's trade mark is indicative of origin and ownership. With the words Microbe Killer is used appellee's own name, the whole being William Radam's Microbe Killer.

*Walton, Hill & Walton,* for appellants, asked that the judgment be reformed so that the cause be remanded for trial upon appellants' cross-bill.

STAYTON, CHIEF JUSTICE.—Judgment having been rendered in accordance with the opinion of the Commission of Appeals, both parties, in effect, ask that the judgment be so reformed as to remand the cause for further proceedings.

Appellants desire this to enable them to prosecute their cross-bill for damages; and appellee suggests that he may be able to offer further evidence on another trial tending to show that his right has been infringed,

even if it be true that the words "Microbe Killer" may not constitute a trade mark.

Without in any respect qualifying the former opinion as to the law of the case, the former judgment will be set aside and a judgment here entered reversing the judgment of the court below and remanding the cause for further proceedings.

*Reversed and remanded.*

Delivered June 28, 1890.