## A. GOODMAN v. H. BOHLS.

### No. 124.

**1. Exhibits in Pleading—Variance.**—In an injunction suit to restrain the defendant from infringing the trade mark of the plaintiff, the petition by exhibits set out the trade mark and the alleged imitation, with appropriate averments to that effect. Objection being urged to the introduction of the plaintiff's trade mark, on ground of variance between it and the general description given in the petition. *held*, that as the exhibit fully described the trade mark, the objection was not well taken.

**2. Resemblance in Trade Marks.**—The court properly charged the jury: "In determining whether there is such resemblance between the packages of tobacco packed by the plaintiff and those sold by the defendant, you are charged, that if defendant's packages, in shape, color, material of packages, size, marks, and devices, should so far resemble those of plaintiff as would be apt to mislead the class of customers generally to whom the same is sold in said market, it is such resemblance as is above referred to." The jury were also properly told, that the "similarity need not be so perfect as would be difficult to distinguish between the two if critically examined and compared," etc.

**3. Protection—Trade Device.**—There can be no doubt about the power of a court of equity, in a proper case, to interpose to prevent the piracy of a device used to distinguish articles manufactured and sold, although the device itself will not constitute a technical trade mark. See example.

APPEAL from El Paso.     Tried below before Hon. T. A. FALVEY.

*Brack & Neill* and *Blacker & Clardy*, for appellant.—1. A trade mark must be of and in itself, or by association, denote origin or ownership of the goods designated by it; and the court should have, by an appropriate charge, left it to the jury to determine from all the evidence in relation to it whether the alleged trade mark was lacking in this essential requisite, and if wanting in it, to find a verdict for the defendant. Canal Co. v. Clark, 13 Wall., 311; Mfg. Co. v. Trainer, 11 Otto, 51; Mfg. Co. v. Rubber Co., 128 U. S., 598; Mfg. Co. v. Spear, 2 Sandf., 597; Upton on Trade Marks, ch. 1, p. 9; Falkenburg v. Lacy, 35 Cal., 64; Burton v. Stratton, 12 Fed. Rep., 700; Candee, Swan & Co. v. Deere, 54 Ill., 439; Wolfe v. Barnett, 24 La. Ann., 97; Ferguson v. Duval Mills, 2 Brewster, 314; Marshall v. Pinkham, 52 Wis., 572; Stokes v. Landgraff, 17 Barb., 608; Cigar Makers' Union v. Conhaim, 40 Minn., 243.

2. A court of equity will not restrain a defendant from the use of a label on the ground that it infringes on plaintiff's trade mark, unless the form of the printed words, the words themselves, and the figures, lines, and devices, are so similar that any person, with such reasonable care and observation as the public generally are capable of using, would mistake one for the other. · Gilman v. Hunnewell, 139 Mass., 139; Tobacco Co. v. Finzer, 128 U. S., 182; Cotts v. Thread Co., 36 Fed. Rep., 324; Popham v. Cole, 66 N. Y., 99.

*Davis, Beall & Kemp,* for appellee.—1. The charge is correct, as the court correctly instructed the jury as to all the facts necessary to be established in order to justify a verdict for appellee. McLean v. Fleming, 95 U. S., 245; Sawyer v. Horn, 1 Fed. Rep., 24; Avery & Sons v. Meikle & Co., 3 S. W. Rep., 609; Battery Co. v. Electric Co., 23 Fed. Rep., 276; White Lead Co. v. Cury, 25 Fed. Rep., 25; Cail v. Wackerborth, 28 Fed. Rep., 286; Baking Powder Co. v. Davis, 26 Fed. Rep., 293; Lee v. Haley, 5 L. R. Ch. App. Cases, 155; Browne's Law of Trade Marks, 2 ed., 43.

2. A court of equity will enjoin the simulating of a trade mark, or the imitation of the external appearance of plaintiff's goods, with the intent to pass off the imitator's goods as those of plaintiff, when the resemblance between the original and the counterfeit is such that the ordinary purchaser using such care as the purchaser ordinarily uses in purchasing that class of goods would be apt to be deceived. Gorham v. White, 14 Wall., 511; McLean v. Fleming, 96 U. S., 245; Mfg. Co. v. Lowell Mills, 129 Mass., 328; Clark v. Clark, 25 Barb., 76; 2 Story's Eq. Jur., 255, note; Browne's Law of Trade Marks, sec. 94.

FISHER, Chief Justice.—On July 18, 1888, H. Bohls, plaintiff below, but appellee in this court, filed his original petition in the District Court of El Paso County, Texas, against the appellant, A. Goodman, for an injunction restraining him from infringing on appellee's trade mark, and from packing and selling smoking tobaccos in packages that, from form, weight, color, material of wrapper, label, method of applying revenue stamp, and other external indicia, so nearly resembling in outward appearance the packages containing a smoking tobacco manufactured and sold by appellee, and named "Havana Mixture," that appellant was enabled to deceive persons intending to buy plaintiff's said Havana Mixture, and thereby to induce them to purchase a smoking tobacco also called Havana Mixture, manufactured by others than appellee and sold by appellant. Appellee, plaintiff below, in said petition also claimed damages to the amount of $5000 from appellant for fraudulently and intentionally imitating, in outward appearance, the packages containing appellee's smoking tobacco, and for thereby fraudulently and intentionally inducing customers of appellee's to buy an inferior tobacco, sold by appellant, also named Havana Mixture, under the belief that same was the Havana Mixture manufactured by appellee.

A preliminary writ of injunction was granted by the district judge as prayed for, and the writ issued July 23, 1888, conforming in substance to the prayer of the original petition.

Appellant, as defendant below, filed both a general denial and a special answer, and plead in reconvention, claiming $2000 damages for the wrongful suing out of the temporary injunction.

On November 27, 1889, the case was tried before a jury in said District Court, and resulted in a verdict for appellee, plaintiff below, and assessed his damages $1. Thereupon the court rendered judgment for the $1 damages, costs of suit, and perpetuating the injunction theretofore issued.

We find the following facts from the record:

1. In 1882 V. Baumgartner and appellee were partners, under the firm name of V. Baumgartner & Co., and among other kinds manufactured and sold a smoking tobacco which they designated "Havana Mixture," to distinguish it from other tobacco, and put up the tobacco so designated in paper packages, and adopted and used as a trade mark the picture of a ship, with the word "Havana" stamped above the picture and the word "Mixture" stamped below it, and as an additional device put the tobacco up in paper packages about three and one-half inches long, two inches wide, and one-half inch thick, and placed the revenue stamp on the edge of each package to which the masts of the picture of the ship pointed. The picture of a ship was stamped on one side of each package, with the word "Havana" in capital letters stamped above it in such form as to make the segment of a circle, and the word "Mixture" in capital letters was stamped in a line below the picture. The cautionary label, printed on red paper, was placed on the edge of each package opposite the one to which the masts of the ship's picture pointed. An additional cautionary label, warning customers to beware of imitations, printed on red paper, was placed on each so as to cover the seal or tie at the end of each package, and extending lengthwise across the middle of the side opposite to that upon which the picture of the ship was stamped. Appellee succeeded to all the rights of Baumgartner & Co. in said device, and was the sole owner of it when suit was instituted. And that the trade mark and device as before described originated with Baumgartner & Co. in and about 1882, and had not been used by any one prior to that time, so far as shown by the evidence, and has been in use by Baumgartner & Co. and by appellee since that time, the appellee holding the same under Baumgartner & Co. And that the appellee as a dealer and manufacturer of tobacco introduced and sold to the trade and the public at El Paso, Texas, tobacco put up in the packages distinguished by the marks and devices above stated; and that was before and at the time of filing this suit, and was before the appellant adopted and used the trade mark and device so used in distinguishing the tobacco sold by him. The trade mark and device used by appellee did not show "origin or ownership either in itself or by association." That the appellee yearly sold considerable quantity of said tobacco in El Paso, which was sold to people there and those of the surrounding country by Kohlberg & Co., dealers in the tobacco manufactured by appellee, and that the tobacco was well liked and favorably known by the consumers thereof and to the trade generally.

2. After the appellee had commenced to use the trade mark and device, and after he had introduced and sold the tobacco distinguished thereby to the trade in El Paso, Texas, and after such facts were known to the appellant, the appellant, a dealer in tobacco at El Paso, Texas, sold tobacco to the public at El Paso and the surrounding country in packages used by him of the same size, weight, form, nature, and color of material as those which contain appellee's Havana Mixture, and have printed in the middle of one side of each package containing the same picture of a ship (except that the sails are numbered in small figures, which is not the case in appellee's device), with the word "Havana" in the segment of a circle above said picture, printed in letters like those used by appellee in the word Havana on the packages of his said tobacco, and the word "Mixture" printed below said picture in a line in letters like those used by appellee in the word "Mixture" on the packages of his said tobacco, and stamp and cautionary labels in form, color, and size and method and place of attaching the same as those used by appellee on his said Havana Mixture. The packages of tobacco used and sold by appellee have upon each the words "Kohlberg Bros." that are not upon the packages used and sold by appellant. On the cautionary label of appellee's package are the words and figures "Factory No. 16—First District of Cal." The cautionary label is signed by Kohlberg Bros. The cautionary label upon the packages used and sold by appellant has upon it "Factory No. 74—Second District of Va." This is about the difference between the two packages. In all other respects the packages are similar. The appellant was using said device and selling tobacco in said packages in the city of El Paso when this suit was instituted, without any authority from the appellee or Kohlberg Bros. That the tobacco sold by him was inferior in quality to that sold by appellee in his packages. That the appellant used said packages and devices thereon in the sale of his tobacco for the purpose and intent of simulating the trade mark and device of appellee, in order to wrongfully impose his tobacco upon the many consumers of appellee's tobacco, in El Paso and vicinity, and with the further purpose of fraudulently depriving the appellee of his trade in his tobacco and the good will of his business.

3. There is such a similarity and resemblance between the packages and devices used by appellant in the sale of his tobacco and that used by appellee as to mislead and deceive an ordinary purchaser to suppose that he was buying the tobacco manufactured and sold by appellee.

*Opinion.*—1. Appellant insists that the court erred in refusing to give a charge requested by him, to the effect, that as the averments of the petition describing the trade mark and device of appellee's packages fail to state that they have thereon the words "Kohlberg Bros.," and the evidence showing that the packages have written thereon such words, that

this fact constitutes a variance between the device declared upon and that proven, and for this reason the jury must find for the appellant.

This position can not be maintained. The petition set out as an exhibit to it the trade marks and device used by both the appellant and appellee. These exhibits were made a part of the petition by appropriate averments to that effect. The exhibit showed that the words Kohlberg Bros. were upon the device used by appellee. Even if the averments did not definitely state that the words Kohlberg Bros. was a part of the appellee's device, the device itself, which was exhibited by the petition, declared this fact. Under these circumstances, we fail to see how the appellant could have been misled. However, the proper time to have raised this question would have been upon objection to the device and trade mark when offered in evidence, and not by a charge requesting the court to declare as a matter of law that the words Kohlberg Bros. constituted a fatal variance between the device declared upon and that proven. Independent of these words, there was abundant evidence identifying the device used by appellee as that described in the petition as in use by him. Under these circumstances, it was for the jury to determine as a fact whether a variance existed, and not for the court to declare as a matter of law.

2. Appellant's third and fourth assignments of error complain of the refusal of the court to give the following charges:

"If the jury believe from the evidence that the device described in plaintiff's petition was such as to constitute the trade mark of plaintiff for the sale of his tobacco, designated as 'Havana Mixture,' and that defendant sold tobacco designated by a similar device or trade mark in imitation of plaintiff's, then it must appear that such similarity was such that the mass of purchasers, paying that attention which such persons usually do in buying the tobacco of defendant, would probably have been deceived by such device, and induced thereby to believe that such tobacco was the tobacco of the plaintiff, before you would be justified in finding a verdict for plaintiff. And in this connection you are charged, that it is not sufficient for plaintiff to show, in order to entitle him to recover, that persons incapable of reading the labels and marks on the respective packages containing the tobacco of plaintiff and defendant might be deceived by the resemblance of such packages, if such resemblance exists, taking into consideration the size, form, shape, and color of the packages, the pictures, words, labels, stamps, and all the devices thereon. And if ordinary attention on the part of customers would enable them to discriminate between the alleged trade marks of plaintiff and defendant, you will find a verdict for defendant.

"In order to justify you in finding a verdict for plaintiff, you must find that the defendant sold the tobacco designated as 'Havana Mixture' for the plaintiff's goods designated by said words, with the intent to deceive

and defraud the plaintiff; that the mark used by the defendant on his to-bacco so closely resembled the mark used by the plaintiff on his as to be cal-culated to deceive persons of ordinary skill and care, and to induce them to believe that the tobacco so marked and sold by them was tobacco man-ufactured or sold by the plaintiff, and that such mark was so used by de-fendant with the fraudulent intention to procure their tobacco to be re-ceived and sold in the market as tobacco of the plaintiff's manufacture."

We think the general charge of the court upon this subject correctly presented the law of the case. Upon these questions, the charge, after presenting the issue as to the rights of the appellee in the device used by him in the sale of his tobacco in El Paso, reads:

"And if you further believe, that in the year 1888 the defendant, A. Goodman, placed on the market in said county of El Paso, and sold in said market, a smoking tobacco put up in packages bearing such a resem-blance to said packages of plaintiff as would deceive the purchasers using such ordinary care as the purchasers would exercise ordinarily in pur-chasing such goods; and if you further believe, that defendant used such mode and manner of packing said tobacco with the design to sell the same in the said market as the tobacco of plaintiff, and thus secure the sale of his tobacco that for such resemblance to plaintiff's packages he would not have, then you will find a verdict for plaintiff. In determin-ing whether there is such a resemblance between the packages of tobacco packed by plaintiff and those sold by defendant, you are charged, that if defendant's packages in shape, color, material of packages, size, marks, and devices should so far resemble those of plaintiff's as would be apt to mislead the class of customers generally to whom the same is sold in said market, it is such resemblance as above referred to. It is not necessary that there should be such a resemblance as it would be difficult to dis-tinguish the two when placed together, or that it would be calculated to deceive an average person in buying defendant's packages in believing that he was purchasing plaintiff's packages. Therefore, if you believe that plaintiff had so packed and sold said tobacco in El Paso County, and that defendant, at the time above referred to, introduced and sold in said market tobacco in packages resembling plaintiff's tobacco, as above ex-plained, with intent to deceive, as above explained, then you will find a verdict for plaintiff and for nominal damages—any small amount will be nominal. It may be 1 cent or $1, or any small sum. If you are not sat-isfied of all the above by a preponderance of proof, you will find for the defendant. If you believe that the packages sold by the defendant did not so resemble the packages put up and sold by plaintiff, as above ex-plained, as would be likely to deceive the general public, as above ex-plained, or if you believe that the defendant did not intend to sell said tobacco to parties purchasing it believing it to be the tobacco of plaintiff, then you will find a verdict for defendant."

The rule submitted by the court in determining if the piracy existed we think the correct one. It leaves the jury to determine if the resemblance between the devices used by the appellee and appellant in designating the packages of tobacco used by each is of the character as would be apt to mislead the class of customers generally to whom the tobacco is sold; and tells them that the similarity need not be so perfect as would be difficult to distinguish between the two if critically examined and compared, but all that is necessary is to show a similarity in the devices that is calculated to mislead an ordinary purchaser in supposing he was buying the genuine article.

In McLean v. Fleming, 96 United States, 251, 253, and 255, the Supreme Court of the United States, in dealing with this question, say: "What degree of resemblance is necessary to constitute an infringement is incapable of exact definition as applicable to all cases. All that courts of justice can do in that regard is to say, that no trader can adopt a trade mark so resembling that of another trader as that ordinary purchasers buying with ordinary caution are likely to be misled. * * * Much must depend in every case upon the appearance and special characteristics of the entire device, but it is safe to declare, as a general rule, that exact similitude is not required to constitute an infringement in order to entitle the complaining party to protection. If the form, marks, contents, words, or special arrangement of the same, or the general appearance of the alleged infringer's device, is such as would be likely to mislead one in the ordinary course of purchasing the goods, and induce him to suppose that he was purchasing the genuine article, then the similitude is such as entitles the injured party to equitable protection and to prevent the continued invasion."

In Lawrence Manufacturing Company v. Lowell Hosiery Mills et al., 129 Massachusetts, 327, 328, the court say: "It is not necessary that the resemblance produced should be such as would mislead an expert or such as would not be easily detected if the original and spurious were seen together. It is enough that such similitude exists as would lead an ordinary purchaser to suppose that he was buying the genuine article and not an imitation."

The general charge of the court also left it to the determination of the jury, whether the appellant wrongfully used the device of appellee.

"Positive proof of fraudulent intent is not required when the proof of infringement is clear, as the liability of the infringer arises from the fact that he is enabled, through the unwarranted use of the device, to sell the simulated article for the one which is genuine." McLean v. Fleming, supra, p. 253.

3. It is next insisted, that as the device or trade mark used by appellee in distinguishing his packages of tobacco does not in itself or by association denote origin or ownership of the goods designated by such trade

mark, that such device will not be considered a trade mark that can be the subject of piracy. A charge was asked by appellant presenting this phase of the question, which the court below refused to give. This is assigned as error.

We do not understand that the case below was presented by appellee upon the theory that the invasion by appellant was the infringement of a trade mark proper; but that the appellee's case consists in the facts— and was so presented by the court below—that the infringement by appellant of the device in use by appellee, although it may not be a trade mark proper, was a fraud upon the rights of appellee in the invasion of the good will and reputation of his business by the simulation and imitation of the device used by appellee in identifying and distinguishing the tobacco of his manufactory, thereby misleading the public to purchase the goods of the imitator. There can be no doubt about the power of a court of equity, in a proper case, to interfere to prevent the piracy of a device used to distinguish the articles manufactured and sold, although the device itself will not constitute a technical trade mark.

" Equity gives relief in such a case upon the ground that one man is not allowed to offer his goods for sale representing them to be the manufacture of another trader in the same commodity. Suppose the latter has obtained celebrity in his manufacture; he is entitled to all the advantages of that celebrity, whether resulting from the greater demand for his goods or from the higher price the public are willing to give for the article, rather than for the goods of the other manufacturer whose reputation is not so high as a manufacturer. When, therefore, a party has been in the habit of stamping his goods with a particular mark or brand, so that purchasers of his goods having that mark or brand know them to be of his manufacture, no other manufacturer has a right to adopt the same stamp, because by doing so he would be substantially representing the goods to be the manufacture of the person who first adopted the stamp, and so would or might be depriving him of the profit he might make by the sale of the goods which the purchaser intended to buy. In such cases the question is not whether the complainant was the original inventor or proprietor of the article made by him and on which he puts his trade mark, nor whether the article made and sold under his trade mark by the defendant is equal to his own in value or quality, but the court proceeds on the ground that the complainant has a valuable interest in the good will of his trade or business, and having adopted a particular label, sign, or trade mark indicating to his customers that the article bearing it is made or sold by him or by his authority, or that he carries on business at a particular place, he is entitled to protection against one who attempts to deprive him of his trade or customers by using such labels, signs, or trade mark without his knowledge or consent. The device adopted by the manufacturer is to distinguish his goods from those manufactured

and sold by another, to the end that the goods may be known in the market as his, and to enable him to secure such profits as result from his reputation for skill, industry, and fidelity. Chancery protects trade marks upon the ground that a party will not be permitted to sell his own goods as those of another.'' McLean v. Fleming, supra.

In the case of Sawyer v. Horn, 1 Federal Reporter, 25, where some of the English and American cases upon the subject are discussed, the court holds, that '' a court of equity will restrain the fraudulent imitation of a package and label, although they do not technically constitute a trade mark, when the public are thereby misled into purchasing the goods of the imitator as those of the original manufacturer.'' Alff & Co. v. Radam, 77 Texas, 541; Radam v. Microbe Destroyer Co., 81 Texas, 127.

We think the facts of this case, in effect, show a fraud and deception practiced by appellant upon the rights of appellee and the public, in the use by him of the simulated device that permitted him to impose his tobacco upon the public as that of the appellee's manufacture, to the end that the public were deceived, and to the invasion of the good will and business of appellee.

Judgment affirmed.

*Affirmed.*

Delivered April 12, 1893.