**RUSSELL GLENN DISTRIBUTING CO. et al. v. SAN ANTONIO & FARMER'S DAIRIES.**

No. 4792.

Court of Civil Appeals of Texas. El Paso.

April 25, 1951.

Rehearing Denied June 6, 1951.

Malone, Lipscomb & Seay, Dallas, Edwards, Belk & Hunter, El Paso, for appellants.

Burges, Scott, Rasberry & Hulse, and Schuyler Marshall, all of El Paso, for appellee.

SUTTON, Justice.

This is an appeal from a judgment and order of the 41st District Court of El Paso County overruling pleas of privilege.

Alberto Navar, Sr., and ten other members of the Navar family operating as partners under the trade and firm name of San Antonio and Farmer's Dairies, sued Russell Glenn Distributing Company, a corporation, Tennessee Dairies, Inc., a corporation, and H. A. Wardlaw, an individual, and other named parties defendant who are no longer in the case, setting up a claimed infringement upon a trade-mark used and claimed by the plaintiffs. Plaintiffs sought an injunction to permanently restrain the further infringement and for damages. Wardlaw was an admitted resident of El Paso County, but the two named corporate defendants timely and in due form filed their pleas of privilege claiming their right to be sued in the counties of their respective domiciles, Ector and Dallas. The pleas were duly controverted and a time set for a hearing thereon. The hearing was commenced on the 15th day of September, 1950, and the order made on December 8, 1950 from which the appeal is prosecuted.

Plaintiffs sought to maintain the venue in El Paso County notwithstanding the pleas of privilege under the 4th, 9th, 23rd and 29a exceptions to the general venue statute, Art. 1995, V.C.S., and under the provisions of Art. 4656, V.C.S. So far as the exceptions are concerned, as we understand it, it is conceded by the parties the plaintiffs were under the necessity of proving a prima facie cause of action against the resident defendant, H. A. Wardlaw, or as against Russell Glenn Distributing Company, alleged to have an agent and representative in El Paso County, or as against some one of the defendants under exception nine.

Plaintiff's trade-mark which is claimed to have been infringed consisted of a gold seal, perfectly circular in form with 55 notches in its outer circumference and a corresponding number of small points and gold color. The gold seal is in color and design in all respects identical with the gold seals commonly found attached to legal documents and exactly like the one attached to the transcript in this case, including color, the number of notches and points. Two of the seals were filed. Across one are the words "Gold Seal" and across the other "Farmers Gold Seal Milk" in black letters, using in each instance a rather distinctive capital G. Applications were made for the registration of these trade-marks in the County Clerk's Office in El Paso County and the Secretary of State's office at Austin. They are described in the application made to the County Clerk as follows, to-wit:

"It is the use of the gold seal and black lettering in the style shown, either by itself or in connection with the trade names and the trade marks described * * *, which we desire the sole and exclusive use of as a distinctive marking for our bottle caps and other milk and cream containers."

The trade marks were registered to be used on milk and cream containers.

Gold seal labels were used on over-top milk bottle caps from about April 15, 1939, until some time during the year 1943, upon which seals were printed in red "Farmers Dairies, El Paso, Texas, Gold Seal Premium Phone 3–1451 Grade A Pasteurized Milk." The words were printed with letters varying in size. The use of the bottle caps were discontinued in 1943, and were not again used until the latter part or fall of 1949, when they were again used, and were in use on the date of the hearing. For a limited time in 1949, plaintiffs put out quarts of milk in cartons white in color with designs and print in orange or gold. Among other designs on the carton there was a small gold seal, entirely different in design and shape, other than being circular, from the one registered and described above across and extending beyond the borders of which is a scroll on which are the words "Gold Seal Premium".

The cartons used by the defendant, Tennessee Dairies, Inc., vary in color. The quart size carton introduced by plaintiffs is a cream colored one with all printing and

stamping done in blue. One-half of the top is well covered with the words "Tennessee Gold Seal Milk", the word Tennessee in large capitals extending across the full width of the top, under which in the same size letters are the words Gold Seal, and underneath those the word Milk. At the top and bottom of the carton is a checkerboard border with blue squares and cream colored squares alternating. On one side appears in small capitals "One Liquid Quart" underneath which is the word "Tennessee" in large capitals extending from one side of the carton to the other. Under this appear "Grade 'A' " in smaller caps, below which is a medallion design in general conformation about one and three-quarter inches in diameter formed by eight folded ends of blue ribbon with the two loose ends protruding out from the bottom, in the center of which is a blue disk about one inch in diameter surrounded by a narrow irregular line of the color of the carton showing through. On the disk in the color of the carton appear the words "Gold Seal"—Gold directly above Seal— and the G and S a little larger than the other letters. Below the emblem appear the words in order, "Pasteurized, Gold Seal, Milk," the gold seal milk being in large capitals in blue and about three-eighths of an inch high, the same size as those in the word Tennessee. Dallas, Texas, appears below the last words above and just above the checkered border. The opposite side of the carton corresponds exactly to that just described. On a third side of the carton is listed a list of "Our Gold Seal Products" ten in number followed by a short statement. The fourth side accommodates various brief advertisements in lines and pictures with "Tennessee" appearing numerous times and among which statements is one that "A farm boy from Tennessee founded Tennessee Dairies in Texas in 1907."

The half gallon carton is in all respects identical in color and design as that of the quart size with the size of the designs and lettering increased in proportion to the size of the carton. A half gallon size carton for homogenized milk in the record is of the exact design of the other half gallon container except the designs and letters are done in red. Other small size cartons for cream are regarded as unimportant.

The testimony is undisputed. The defendants present five points all in support of their single proposition, plaintiffs have wholly failed to prove a cause of action against any of the defendants, essential to the sustaining of the venue, and the undisputed proof establishes as a matter of law there has been no infringement.

There is considerable debate indulged in by counsel as to whether or not plaintiffs' user was such as would create a right, whether or not there was a proper filing with the County Clerk of El Paso County, and whether or not there has been an abandonment of the claimed trade-marks because of nonuser thereof for a period of some six years. In our view of the case we think it unnecessary to consider or decide those matters, because they become immaterial and unimportant in the decision we are required to make on the decisive issue presented to us, and that it may be assumed, without so deciding, plaintiffs have valid trade-marks as claimed by them.

■ As is apparent from the record and from the statement from the record heretofore made Tennessee Dairies have not copied plaintiffs' trade-marks. The only thing common to both are the words "Gold Seal". In all other particulars they are wholly dissimilar. There can be nothing more than imitation and partial use at most. In that situation deceptiveness becomes the controlling factor, and the universal test is, we believe, "Is the trade-mark of the defendant, Tennessee Dairies, so similar to plaintiffs' as to be deceptive to the extent that any person with such reasonable care and observation as the public generally are capable of using and may be expected to exercise would mistake the product of Tennessee Dairies for that of plaintiffs?" This test has been applied consistently by the courts of Texas, as is reflected by such decisions as Alff v. Radam, 77 Tex. 530, 14 S.W. 164, 9 L.R.A.

464

145(T) ; Dentler & Sons v. Fuller's Food Products, Tex.Civ.App., 183 S.W.2d 768, e. r.; and the cases there cited. It is thought the law applied in the Alff and the Dentler cases, supra, are particularly applicable to the facts of this case. In the Alff case the words were too similar to admit of distinction and the Court there held notwithstanding the determination the words were not entitled to protection as a trade mark, as used in connection with the device, symbol and illustration and color, designs of labels and color of printing constitute the claimed trade-marks so entirely dissimilar as to render it impossible for any person of ordinary prudence and caution to have been deceived by the defendant's label and thereby induced to buy the one when he intended to buy the other. Likewise in the instant case, it seems to us, the words as used upon the containers of Tennessee Dairies in connection with all else that appears thereon so apparently renders it so dissimilar to that used and claimed by the plaintiffs as to make it highly improbable, if not impossible, for the least observant and cautious to confuse the product of the one for the other and deceive him to the extent he would buy one when he intended to purchase the other. Under the record we conclude there is a total failure to prove a prima facie case of infringement.

There can be no inference from the record there was an intentional simulation or any fraud, because Tennessee Dairies as early as 1928 used, adopted and registered in Dallas County the words "Gold Seal" as a trade mark and have consistently and continuously used it as such.

The provisions of Art. 4656, supra, have no application in this case.

In accordance with the conclusions here reached the judgment of the trial court will be reversed and the cause remanded with instructions the pleas of privilege be sustained and the case transferred in accordance with the prayers of the pleas of privilege.