## GLASS v. KOTTWITZ. (No. 9004).

Court of Civil Appeals of Texas. Galveston.
June 17, 1927.

Rehearing Denied July 14, 1927.

**1. Judgment ⚷17(10)—Judgment held not void because trial was held before return date of original citation, where defendant answered, appeared, and presented evidence.**

Judgment is not void because citation commanding defendant to appear was returnable at later date than date of trial, where defendant filed plea in abatement and answer and on day of trial appeared and presented evidence without protest against court's jurisdiction to try cause at such time.

**2. Appeal and error ⚷544(2), 846(2,5)—In absence of statement of facts and findings of law and fact, only question raised by objections going to merits held to be whether pleadings justified judgment.**

Where neither statement of facts nor findings of law and fact are brought up with record, only question presented by objections as to merits of controversy *held* to be general one of whether plaintiff's pleadings justified judgment rendered.

**3. Injunction ⚷56—Discoverer of secret medical formulas may prevent disclosure by ex-employee, though they be not in writing or protected by copyright, patent, or registered trade-marks (Const. art. 12, § 6).**

Discoverer of secret formulas for manufacture of medicine may prevent disclosure by ex-employee contrary to his agreement, though they be not in writing or protected by copyright, patent, or registered trade-mark, notwithstanding that such formulas may not have constituted property, within Const. art. 12, § 6.

**4. Appeal and error ⚷907(2)—On defendant's appeal, plaintiff's allegations are presumed proved, in absence of evidence.**

On defendant's appeal, reviewing court must assume that averments of plaintiff's pleading were proved, in the absence of evidence.

**5. Trade-marks and trade-names and unfair competition ⚷73(1)—Even generic names and emblems will be protected where prior association with new enterprise makes subsequent use by others misleading and injurious.**

Even generic names and emblems on product will be protected if there has been such prior combination and association of them with, and application of them to, new and distinctive enterprise that their subsequent use by others would tend to mislead public and injure association first so using them.

Error from District Court, Harris County; Chas. E. Ashe, Judge.

Action by L. A. Kottwitz, independent executor of the estates of M'rs. Mamie J. and Leon Bichon, deceased, against Wallace W.

Glass and another. Judgment for plaintiff, and defendant Glass brings error. Affirmed.

John L. Meany and R. H. Ward, both of Houston, for plaintiff in error.

A. B. Wilson and L. A. Kottwitz, both of Houston, for defendant in error.

GRAVES, J. This writ of error has been sued out by W. W. Glass alone, looking to the review of an adverse judgment to him below, the substance of which is this:

"On this December 7, 1925, in its regular order for trial came on to be heard the application of plaintiff, L. A. Kottwitz, as independent executor of the last will and testament of said Mrs. Mamie J. Bichon, deceased, and of the last will and testament of Leon Bichon, deceased, for a writ of injunction against the defendants W. W. Glass and T. J. Reagan. * * *

"And both plaintiff and defendants having appeared in person and by their attorneys, and no jury having been demanded, and the court, having heard the pleadings and the evidence offered by both parties and having duly considered the facts and the law, is of the opinion that the relief sought by plaintiff should be granted.

"It is therefore ordered, adjudged, and decreed by the court that the defendants W. W. Glass, a resident of Harris county, Tex., and T. J. Reagan, a resident of Limestone county, Tex., and their respective agents and employees, be and they are hereby enjoined and restrained from selling or distributing any of the medicines, the formulas for which were prepared or used by the said Leon Bichon, deceased, during his lifetime, and now used by the plaintiff, as executor aforesaid, which were obtained and secured by the defendant Glass during the course of his employment by the said Leon Bichon, deceased, and from using the list of customers secured by defendant Glass from the business of Leon Bichon, deceased, or from the business conducted by plaintiff as executor aforesaid, and from representing to any person, persons, firms, or corporations, in writing or otherwise, that they, or either of them, are the only living persons knowing how to compound the secret Bichon remedies, from divulging to any persons said formulas, or any of them; from using the same or forms or labels, postcards, or other printed matter as were used by Leon Bichon, deceased, in the operation of his drug business, or as are used by the plaintiff in the operation of said drug business, as executor aforesaid, in the conduct of said business, all of which will be observed by the defendants in this cause as the order and judgment of this court herein.

"Plaintiff dismisses his cause of action herein asserted without prejudice against the defendant W. W. Glass for the sum of $354.44.

"To which action of the court the defendants and each of them excepted and gave notice of appeal."

It is contended on the appeal that the judgment is null and void for want of power or authority in the court to render the same, because (1) the citation commanding the defendant to appear and answer in the cause was made returnable on December 21, 1925,

whereas the trial court, without jurisdiction or authority so to do, peremptorily called it for trial and rendered final judgment therein on December 7, 1925.

(2) The plaintiff's pleadings failed to support it, in that they neither alleged (a) that the formulas used by Leon Bichon were either ever reduced to writing, or protected by him by copyright, patent, or registered trade-mark, nor (b) any facts showing that he had any exclusive right during his lifetime to their use.

(3) That the secret formulas, as declared upon by plaintiff, not being in writing or protected by copyright, patent, or registered trade-mark, were neither the subject of exclusive proprietorship in Leon Bichon, nor did they constitute such property as would pass to the plaintiff herein as his executor or to his heirs at law, under the statute of descent and distribution.

(4) No one can claim protection for the exclusive use of a trade-mark or trade-name, which would practically give him a monopoly in the sale of goods other than those produced or made by himself, nor can a generic name, or a name merely descriptive of an article of trade, of its qualities, ingredients, or characteristics, be employed as a trade-mark, and the exclusive use of it be entitled to legal protection.

[1] We conclude that none of these objections can be sustained.

1. There is nothing in the record impeaching the quoted recitation in the judgment that the cause was taken up in its regular order for trial; this court must therefore so assume.

It does appear, however, that the defendant Glass entered his appearance and filed his original answer in the cause on November 24, 1925, without being compelled to do so by any prior ruling of the court sustaining its jurisdiction, and did not therein question the court's jurisdiction, but did invoke its judgment on the merits of the controversy (1) by plea in abatement of the suit for the alleged want of inherent merit, and, subject thereto, (2) by a general answer; that he further, on the day of the trial, December 7, 1925, and still without protest against the court's "jurisdiction or authority" to try the cause at that time, appeared in person and by counsel, presented evidence, and, on being cast, simply excepted and gave notice of appeal from the judgment. This procedure had the effect of then not only joining issue with the plaintiff, but also of subjecting himself to the court's authority to dispose of it, irrespective of the later return date of the original citation. Railway v. Hale, 109 Tex. 251, 206 S. W. 75; York v. State, 73 Tex. 651, 11 S. W. 869; Southwest Nat. Bank v. Cates (Tex. Civ. App.) 262 S. W. 569.

As its terms show, the judgment rendered was a final one, fully disposing of all the issues raised; if it were not, it is certain that at this late date this court would have no jurisdiction to entertain an appeal therefrom.

[2] 2. There being neither a statement of facts nor findings of law and fact brought up with the record, the only question the other objections present is the general one of whether or not the plaintiff's pleadings justified the judgment rendered.

[3] We think they did; while these secret formulas may not have constituted "property," within the terms of article 12, par. 6, of our Constitution, still it was not indispensable that they be in writing, or protected by copyright, patent or registered trademark, for their discoverer to have such a right in them as entitled him to maintain the secrecy of his invention and prevent its disclosure or use by one obtaining a knowledge thereof through fraud or breach of contract with him. O'Bear v. Anti-explo. Co., 101 Tex. 431, 108 S. W. 967, 109 S. W. 931, 16 L. R. A. (N. S.) 520, 130 Am. St. Rep. 865; Chadwick v. Covell, 151 Mass. 190, 23 N. E. 1068, 6 L. R. A. 839, 21 Am. St. Rep. 442.

That was precisely the kind of right the executor here declared upon and sought to enforce in this application for injunction; in substance, as thus stated in his brief in this court, he alleged that:

"For a number of years prior to April, 1925, Leon Bichon conducted a mail order drug business in the city of Houston, manufactured, sold, and distributed certain medicines, the formulas of which were of his own concoction, and were prepared by and were known only to him, except to such an extent as was disclosed by him to the defendant; that during the course of many years in business he obtained a large mailing list of customers known only to himself, which list was of great value, was a part of the private files of his business, and netted him $5,000 per year, or more; that the formulas so used by him in the preparation of his medicines, as well as the list of mail order customers, were acquired and secured at great expense, and practically his entire receipts, which were large, came from the medicines so prepared and his mail order business; for several years prior to the death of Leon Bichon, the defendant worked in his drug store at various times, assisting him in the conduct of his business, and enjoying his utmost confidence; during the course of this employment, after gaining his confidence and good will, and after making a sacred promise to Bichon that he would never divulge or use the information as to the formulas of the business so given him by Bichon, other than for the benefit of Bichon or his family, the defendant induced Bichon to divulge to him the formulas used in the manufacture of 16 different prescriptions for different diseases and ailments; thereupon the defendant was permitted to assist in the manufacture of the 16 medicines as an employee of Leon Bichon, and in this way acquired the knowledge of the formulas and the knack of manufacturing the same, under his promise and agreement not to divulge or use the same; after the death of Leon Bichon, and up to October 20, 1925, defendant was in the employ of plaintiff, as ex-

ecutor, conducting the business · of Bichon's drug store, and obtained the mailing list of the business without plaintiff's knowledge or consent, as well as the forms of letters, postcards, labels, and other printed and written matter used by Leon Bichon in the conduct of his mail order drug business; defendant has since opened up a drug store in Houston, and is both advertising the fact of his former connection with Leon Bichon and circularizing the customers of Leon Bichon's drug store to the effect that he is the only living person who knows how to compound the secret Bichon remedies; he is also using the same class of printed matter designed to appear in all respects the same as the printed and advertising matter used on the labels and packages of Leon Bichon, deceased; the defendant is wholly insolvent," etc.

[4] Assuming these averments to have been proved, as must be done in the absence of the evidence, the right to the writ awarded is upheld by these additional authorities: Burrell v. Michaux (Tex. Civ. App.) 273 S. W. 874, aff. (Tex. Com. App.) 286 S. W. 176; Luckett v. Orange Julep Co., 271 Mo. 289, 196 S. W. 740; Germo Mfg. Co. v. Combs, 209 Mo. App. 651, 240 S. W. 877; Alff. v. Radam, 77 Tex. 530, 14 S. W. 164, 9 L. R. A. 145, 19 Am. St. Rep. 792; 38 Cyc. pp. 835, 836; Marshall v. Pinkham, 52 Wis. 572, 9 N. W. 615, 38 Am. Rep. 756; Watkins v. Landon, 52 Minn. 389, 54 N. W. 193, 19 L. R. A. 236, 38 Am. St. Rep. 560.

In the Germo Case, the applicable principle is thus stated:

"It is well settled that one who has a secret process or formula, even though unpatented, has a property right therein, which, though subject to be lost, should one honestly discover or rightfully come into the possession of a knowledge of the same, nevertheless will be protected as against those who, through breach of trust or violated confidence, attempt to apply the secret to their own use or to impart it to others."

Syllabus 9 then further summarizes the effect of that holding as follows:

"Where a formula for the manufacture of a poultry remedy· was brought to a partnership by defendant, one of the partners, as a ·private secret formula, and sold as such by them to a corporation organized by them, and the fact that it was secret placed on the corporate records and emphasized in the conduct of the business, and the stock was sold at a large price, equity will grant the corporation relief against a competing partnership organized by defendant to manufacture and sell substantially the same remedy under another name."

[5] The rule as to the use of generic names in such connection was declared by this court in Burrell v. Michaux, supra, at page 880, par. 3, to be:

"Even generic names and emblems will be so protected if there has been such a prior combination and association of them with, or application of them to, a new and distinctive en-terprise that their subsequent use by others would thus tend to mislead the public and injure the association first so using them."

As a matter of course, the trial ·court's order is not to be construed as declaring any. perpetuity, but rather as limiting the scope and effect of the restraint granted to the particular parties litigant, as well as to and during the continuation of the conditions that gave rise to the controversy.

The judgment has been affirmed. .

Affirmed.