**ASSOCIATED PLASTICS COMPANIES, Inc. v. GITS MOLDING CORPO-RATION et al.**

**No. 9963.**

United States Court of Appeals, Seventh Circuit.

June 19, 1950.

Bertram William Coltman, Robert W. Poore, Chicago, Ill. (Thiess, Olson & Mecklenburger, Chicago, Ill., of counsel), for appellant.

Richard Russell Wolfe, Alwin F. Pitzner, Jarrett Ross Clark, all of Chicago, Ill. (Carlson, Pitzner, Hubbard & Wolfe, Chicago, Ill., of counsel), for appellee.

Before KERNER, DUFFY, and SWAIM, Circuit Judges.

KERNER, Circuit Judge.

By this appeal defendants seek to reverse a judgment entered in a declaratory judgment action. The relief sought by plaintiff was an adjudication of invalidity of Gits' Patents Nos. 2,433,210 and 2,433,211 and Patent No. D-137,122, and for damages for unfair competition. Defendants answered and filed a counterclaim asserting the validity of the patents and charging plaintiff with infringement of the design patent and the Gits patents by manufacturing and selling ice cube trays embodying the claimed inventions patented therein. The District Court entered judgment adjudging all three of the patents invalid and void, retained jurisdiction of plaintiff's claim for damages for unfair competition, and dismissed defendants' counterclaim. The court also entered judgment that plaintiff recover its reasonable attorneys' fees incident to preparing for trial, and trial, of the issue of validity. Defendants appeal from all parts of the judgment except that part holding Patent No. 2,433,211 invalid.

On August 29, 1947, when plaintiff commenced its action against defendants, only the design patent had issued, and Gits' application, filed February 2, 1945, for Patent No. 2,433,210, issued December 23, 1947, was still pending in the Patent Office. This patent, as well as the design patent, relates to ice freezing trays of thermoplastic material adapted for use in refrigerators for freezing a plurality of ice cubes.

The specification in No. 2,433,210 states that an object of the invention is to provide an improved, simple and efficient form of structure for freezing trays, which may be advantageously made of a thermoplastic material capable of being molded in a single operation and providing maximum heat conducting surfaces for each compartment in which an ice cube is frozen. A further object is to provide a freezing tray of improved structure which may be made of a thermoplastic material that tends to retard frost formation upon the exposed outer surfaces and to which the ice does not necessarily tend to adhere so that the ice cubes may be readily dislodged. Another purpose is to provide an improved, simple and efficient form of thermoplastic structure which may be twisted slightly to loosen the ice cubes in the compartment and which is provided with a simple means of limiting the twisting action whereby to prevent permanent distortion of the tray.

The specification also states that the ice cube or freezing tray comprises a plurality of individual compartments which may be arranged in any cell-like pattern and may be of any desirable shape. The upper portion of the side walls merge into what may be called an upper wall or ledge that extends about all sides of the tray as well as between rows longitudinally of the tray and crosswise between adjacent compartments of each row. The side walls taper inwardly from top to bottom to provide air spaces between the compartments. The up-

per ledges are described as functioning to transmit the torsional twist through the entire body of the tray, and the reinforcing ribs, shown in the patent between adjacent compartments, are said to serve a dual function of tending to limit the torsional twist and distributing the torsional twist to flex the top and bottom side walls individually.

The ice tray shown in the design patent consists of a group of individual tapered cells or cube compartments, arranged in two rows and joined together at their upper edges to form a flat top. A curved ledge at one end of the top serves as a handle. The ledge merges with the plane of the top of the tray, and serves to draw the structure together. Viewed from any side, the angle between the adjacent side walls of the cells or compartments gives a saw-toothed or comb effect to the side.

Claims 1, 2, and 4 to 12 inclusive of No. 2,433,210 are involved. Claims 11 and 12 are typical and appear in foot note 1. Defendants in their brief say: "The claims of Gits are not directed to the mere use of thermoplastic material in making an ice cube tray" but they assert that the gist of the alleged invention is a new type of ice cube tray that, by a slight torsional twist, will release one or any number of cubes

by a popping-out action, in a whole dry state without requiring any melting before release, as by running water over the tray or by letting it remain in the open for some time before using.

Plaintiff contends that there is no novelty in the inventions. It says that every element claimed to exist in Gits' disclosure is found in the prior art, and if Gits presented any new element, it amounted to nothing more than mechanical skill.

On the question of novelty and invention, the trial judge heard all of the evidence adduced by the parties. He filed a memorandum opinion and made specific findings of fact based upon the relevant prior art [2] and the conflicting oral testimony of witnesses. He found that the ice cube tray shown in the design patent was as plain in appearance as the familiar egg poacher or muffin tin, possessing no artistic merit and wholly lacking in originality. Its shape and configuration were wholly utilitarian. It failed to display the artistic merit required to support a valid design patent.

■■■ To entitle an applicant to a design patent there must be originality and the exercise of the inventive faculty. Mere mechanical skill, whether of the artisan or of the artist, is insufficient. Battery

---

1. 11. An ice freezing tray comprising a body of thermoplastic material characterized by a resiliency permitting flexing to free the ice, separately formed compartments having their walls integrally formed and integrally united along their top edges to the walls of adjacent compartments, the walls between adjacent compartments below their top edges being separated by air spaces to provide for individually exposed heat conducting surfaces for each compartment, said body being twistable by a manual gripping of the tray at its ends to flex said walls to free the bodies of ice in said compartments, and portions of thermoplastic material disposed on each side of the longitudinal center line of said tray and bridging said air spaces for connecting certain of the walls of adjoining compartments, said portions of thermoplastic material tending to transmit a torsional twist to flex said walls when said tray is manually gripped at the ends and torsionally twisted.

12. A freezing tray comprising compartments each composed of upwardly tapered side walls and a bottom wall and all of flexible thermoplastic material to which ice and frost will not adhere, side walls of each compartment integrally joining side walls of adjacent compartments at their upper edges to form a continuous cell-like body made entirely of said flexible thermoplastic material, said walls of adjacent compartments being spaced from each other on all sides by said tapered formation and being form-sustaining when said compartments are filled with liquid, the top portions of said compartments where said walls are joined cooperating to produce a formation that will transmit an endwise torsional twist of the tray through all of said walls to distort the normal shape cross sectionally of each compartment whereby to loosen frozen material in each compartment.

2. Copeman, No. 17,278; Chilton, No. 1,-907,502; Geyer, No. 1,964,431; and Pizarro, No. 2,323,486.

Patents Corp. v. Chicago Cycle Supply Co., 7 Cir., 111 F.2d 861. More is required for a valid design patent than that the design be new and pleasing enough to catch the trade; it must be the product of invention, by which is meant that conception of the design must demand some exceptional talent beyond the skill of the ordinary designer. Neufeld-Furst & Co. v. Jay-Day Frocks, 2 Cir., 112 F.2d 715. See also S. Dresner & Son v. Doppelt, 7 Cir., 120 F.2d 50; Zangerle & Peterson Co. v. Venice Furniture Novelty Mfg. Co., 7 Cir., 133 F.2d 266; General Time Instruments Corp. v. United States Time Corp., 2 Cir., 165 F.2d 853; Capex Co. v. Swartz, 7 Cir., 166 F.2d 5; and Hueter v. Compco Corp., 7 Cir., 179 F. 2d 416.

■ With these principles in mind, we have examined the record. It discloses that various types of ice cube trays have been used for years, and that these trays have one or more of the elements or features of the tray pictured in the design patent, and hence the court did not err in finding that the tray lacked originality, that it possessed no artistic merit, and failed to display the artistic merit required to support a valid design patent.

■ We now consider Patent No. 2,433,210. The fundamental question in determining the issue of validity is the extent of the contribution or advance made by the device or product covered by the patent.

The trial judge stated that both parties had refrigerators in court and made demonstrations of trays filled with ice, and he found "that on twisting the trays * * * all of the cubes would pop out except those cubes at each end [of the tray] where it was necessary to grasp the tray to give it a twist. The twisting had absolutely no effect on those end cubes and no retractile force popped them out. Those end cubes could be removed by turning the tray sideways and giving it a transverse torsional twist, but not otherwise."

The court also found that the provision of the ribs, such as are shown in the ice tray, was a simple mechanical expedient for reenforcement normally to be expected of a mechanic skilled in molding plastic articles; that Gits knew nothing of the characteristics of the plastics referred to in the patent; that polyethylene or polythene are plastics having desirable qualities for ice cube trays available to anyone from at least two sources, and that one of the manufacturers thereof, more than a year prior to September 5, 1947, published an advertising pamphlet which expressly recommended polyethylene or polythene for use in making ice cube trays that might be made of plastic; that so far as the ice cube trays of the parties are concerned, the only improvement over the old-fashioned rubber tray lies in the discovery of new thermoplastics which are claimed to have less wettability and better flexibility for the removal of ice cubes by torsion. But the discovery of such new thermoplastics was the discovery of research chemists who are strangers to this action and the fruits of whose discoveries are available to the public generally.

■ Recently, in Keuffel & Esser Co. v. Pickett & Eckel, 7 Cir., 182 F.2d 581, we said: "It is, of course, true that a new combination of old elements may amount to invention, and the fact that, viewed in retrospect, a conception seems simple, does not justify denial of inventive genius where the need for the device long existed and the solution of the problem did not occur either to experts or to those skilled in the art, * * *. But novelty and increased utility in an improvement upon previous devices do not necessarily make it an invention * * *. A device which displays only the expected skill of the maker's calling * * * is in no sense the creative work of an inventive faculty."

■ It has been held that "Perfection of workmanship, however much it may increase the convenience, extend the use, or diminish expense, is not patentable," Reckendorfer v. Faber, 92 U.S. 347, 356, 23 L.Ed. 719, and that the question whether an improvement of a device displays the expected skill of the maker's calling is a question of fact. A finding by a trial court upon that question and its determination will not be set aside unless clearly erroneous. Barie v. Superior Tanning Co., 7 Cir., 182 F.2d 724. See also Standard Oil Development Co. v. Marzall, D.C.Cir., 181 F.2d 280. A finding of fact is clearly erroneous

only when it is not supported by substantial evidence, is contrary to the clear weight of the evidence, or is arrived at by the application of a wrong principle of law. Warren v. Keep, 155 U.S. 265, 267, 15 S.Ct. 83, 39 L.Ed. 144, and Policyholder's Nat. Life Ins. Co. v. Harding, 8 Cir., 147 F.2d 851.

We have already observed that the trial judge in making his findings of fact and conclusions of law considered the relevant prior art and the conflicting oral testimony of witnesses. Without describing in detail these prior art patents or the oral testimony of the witnesses, it is sufficient to say that we have examined the testimony as well as the prior art patents. The Copeman patent, an invention relating to freezing containers for mechanical refrigerators, issued April 23, 1929, disclosed a structure for forming ice cubes so that the filled tray can be distorted in order that the ice cubes therein can be released quickly and efficiently without any heating or melting. See Copeman Laboratories Co. v. General Plastics Corp., 7 Cir., 149 F.2d 962. The Chilton patent, issued May 9, 1933, shows an ice cube tray of flexible rubber consisting of separate ice pockets to facilitate free circulation of air around each pocket. The ice cubes are removed by pressure. The Geyer patent, issued June 26, 1934, discloses a flexible ice cube tray in which the individual ice cube pockets have tapered walls and are made of a thermoplastic, rubber, for easy distortion and removal of the cubes.

■ A long line of cases has held it to be an essential requirement for the validity of a patent that the subject-matter display invention, more ingenuity than the work of a mechanic skilled in the art. Under this test, some substantial innovation is necessary, an innovation for which society is truly indebted to the efforts of the patentee. The primary purpose of our patent system is not reward of the individual but the advancement of the arts and sciences. Its inducement is directed to disclosure of advances in knowledge which will be beneficial to society; it is not a certificate of merit, but an incentive to disclosure. Consequently it is not concerned with the quality of the inventor's mind, but with the quality of his product. Sinclair & Carroll Co. v. Interchemical Corp., 325 U.S. 327, 330, 65 S.Ct. 1143, 89 L.Ed. 1644.

■ To place a reinforcing rib or web on any molded article is as old as molding itself. The mere strengthening or reinforcement of a part of an article is not invention. Walker Mfg. Co. v. Illinois Brass Mfg. Co., 7 Cir., 265 F. 279, and 1 Walker on Patents 187, § 30 (Deller Ed. 1937) and cases there cited. True, the prior art patents speak of flexible rubber and flexible non-metallic material. In our case there was testimony of an expert witness that rubber is a moldable plastic, and the courts have held that the substitution of one material for another, which does not involve change of method nor develop novelty of use, even though it may result in a superior article, is not necessarily a patentable invention. Florsheim v. Schilling, 137 U.S. 64, 76, 11 S.Ct. 20, 34 L.Ed. 574; Minton Mfg. Co. v. Continental Briar Pipe Co., 2 Cir., 93 F.2d 271; Barry v. Studebaker Corp., 7 Cir., 113 F.2d 400; and Electro Mfg. Co. v. Yellin, 7 Cir., 132 F.2d 979.

■ Perhaps it is true that Gits' tray displayed more perfect workmanship, and by the use of thermoplastic material, which is available to the public generally, increased the convenience of the user more than similar devices shown in the cited prior art, yet the trial judge, in the state of this record and the applicable law, was privileged to find that Gits' effort or disclosure was merely the skill expected of a mechanic skilled in molding plastic articles. We think the court applied the correct test as to whether Gits' disclosure displayed invention, and since the judge applied no wrong principle of law in reaching his conclusion, we may not disturb his judgment.

■ One other question remains to be discussed. The trial judge found: "Upon the basis of Joseph A. Gits' testimony * * * I find not only that his design patent * * * is void for lack of originality but moreover that he knew that it was void for lack of originality. He substantially copied the tray * * * from a tray taken out of a Norge ice box at his home." And the court also found "that the

claims of the defendants to having any valid patent were never asserted in good faith." Based upon these findings, he entered a judgment that plaintiff recover its reasonable attorneys' fees.

We do not believe the record justifies these findings or the entry of such a judgment. In considering the question at hand it must be remembered that when the patents issued they became clothed with the presumption of validity.

It is true, of course, that under § 70 of 35 U.S.C.A. the court may in its discretion award reasonable attorneys' fees to the prevailing party, but attorneys' fees are not to be allowed as a matter of course to the prevailing party. Blanc v. Spartan Tool Co., 7 Cir., 178 F.2d 104. Here defendants served a notice upon plaintiff charging infringement and demanding that plaintiff cease the manufacture and sale of its trays, but that fact of itself does not compel a finding of bad faith. United States Galvinizing & Plating Equipment Corp. v. Hanson-Van Winkle-Munning Co., 4 Cir., 104 F.2d 856. Neither may a finding of bad faith be said to be supported solely because defendants have been unsuccessful in their endeavor to establish the validity of the patents.

The judgment of the District Court is therefore modified by striking therefrom the award for attorneys' fees. As thus modified, the judgment is affirmed. Two-thirds of the costs of this appeal will be paid by the appellants, and one-third by the appellee. It is so ordered.