## VANN v. TOBY.

No. 14637.

Court of Civil Appeals of Texas. Dallas.

May 29, 1953.

Rehearing Denied June 26, 1953.

Van Zandt & Sanford, Sherman, for appellant.

Neilson Rogers and George Hamilton, Sherman, for appellee.

CRAMER, Justice.

This action was by Toby against Vann for actual damages of $11,558.16 and exemplary damages of $7,500 growing out of an alleged breach by Vann of a part written and part oral contract entered into by the parties about January 1, 1948. The written portion, omitting formal parts, was:

"This contract and agreement, this day entered into by and between Bill Vann, owner of the Cooperative Contact Company, of Sherman, Grayson County, Texas, and George E. Toby, of Dallas, Dallas County, Texas. (1) George E. Toby, inventor and sole owner of the Toby Street Marker, on which patent has been applied for, appoints the Cooperative Contact Company as sole Distributor of the said Toby Street Marker, throughout the United States, for a period of 24 months from this date. (2) The Cooperative Contact Company agrees to diligently prosecute the sale of the Toby Street Marker, and to pay George E. Toby a royalty of ten cents (10¢) per marker on all street markers sold. Payments of royalty to be made on the 10th of each month covering all street markers sold during the preceding month. (3) The Cooperative Contact Company agrees that during the period of this contract and agreement, George E. Toby will be Sales Manager of the Toby Street Marker Sales Department of the Cooperative Contact Company. (4) It is mutually agreed that in addition to royalty, George E. Toby will be paid salesman's commission on all Toby Street Markers sold within the State of Texas. (5) It is understood that George E. Toby will incorporate the Toby Street Marker Company of Texas, and that when charter is issued formal contract will then be drawn up between said corporation and Bill Vann, owner of the Cooperative Contact Company covering the terms and conditions of this contract and agreement. (6) Orders for shipment on street markers sold will be forwarded to the manufacturer thereof, as designated by Mr. George E. Toby, and upon shipment, the Cooperative Contact Company will pay said manufacturer in full, for the cost of producing said Toby Street Markers, and all accounts from customers are payable to the Cooperative Contact Company. (7) It is understood and agreed that payment for all street markers sold will be made directly to the Cooperative Contact Company of Sherman, Texas, and that it will pay all salesman's commissions. * * *."

The oral portion alleged and testified to was as follows: Bill Vann represented to Toby that if he would permit him to exclusively distribute the street markers, he, Vann, would not handle or distribute any other street markers during the life of their contract.

Toby alleged a breach of the contract by Vann, (a) by failing to comply with paragraph 2 thereof in that on or about April 5, 1949 he and his agents began to suppress by literature and advertising the sale of "Toby Street Markers" and began to manufacture and sell a street marker of different origin by circulating literature and advertisements through his agents, etc., to prospective customers; by failing to pay Toby some $7,639.16 commissions and royalties

due under the contract; and, in the alternative, plead that on or about January 1, 1948, prior to execution of the contract, Vann represented to Toby that if he would permit him to exclusively distribute the markers he would not handle or distribute any other street markers during the life of the contract here, but that notwithstanding such representation, Vann, as soon as his business became profitable, violated such representations and began the manufacture of an identical marker (except for the color, blue instead of black letters) which he called "the new improved Royal Blue Street Marker." Toby further alleged that in accordance with the contract and before the breach thereof by Vann, he delivered to Vann patterns for the Toby marker of the cash market value of $819.50, which, after the breach, he failed to return; also alleged that Vann failed to account to him for the royalty on markers sold under the contract, and sought an accounting; further alleged that he was forced to purchase new patterns at an expense of $1,100 and was put to an additional expense of $2,000 in securing a new list of customers and re-entering the business himself. He prayed for actual damages of $11,558.16 plus $7,500 exemplary damages. Vann answered by general denial but admitted entering into the contract; denied its breach, asserting that he was at all times ready to perform the contract; denied that Toby was ready to perform, but that on and after Feb. 12, 1949 Toby refused to comply with and perform the contract; denied the oral agreement not to handle or distribute any other street markers during the life of the contract.

On the trial the jury, in answer to 27 special issues, found in substance from disputed evidence the following facts:

(1) It was the intention of Toby to perform the contract in question dated 1-1-48 from the date he received the letter, February 16, 1949 up to 3-31-49 when he got the circular in Iowa Park. (2) That Vann failed to diligently prosecute the sale of the Toby Street Marker on or before March 31, 1949. (3) That Toby was compelled to discontinue the distribution of his street marker through Vann because of Vann's failure to diligently prosecute the sale of said markers. (4) That Toby suffered a loss of profits under the contract by reason of Vann's failure to diligently prosecute the sale of the Toby Street Marker, (5) in the sum of $4,500. (6) That Vann retained possession of some of the Toby street marker patterns located at Wright Aluminum Works after March 31, 1949 and (7) refused to return them thereafter to Toby. (8) That the value of said markers retained by Vann on 3-15-49 in Grayson County, Texas was $400. (9) That Toby had purchased new markers to replace the ones Vann retained, (10) at an expense of $1,100. (11) Before signing the contract Vann represented to Toby that he would not handle or distribute any other street markers than Toby's during the life of their contract, (12) which representation was untrue and (13) made by Vann with the intention of inducing Toby to enter into the contract. (14) That Toby believed such representation, (15) relied thereon, and (16) was induced to enter into the contract; (17) would not have entered into the contract except for such representation. (18) That Toby should be allowed exemplary damages against Vann, (19) in the amount of $1,250. (20) Toby and Vann did not on April 13, 1949 agree to rescind the contract. (21) Toby did fail to transmit for Vann's account all orders taken for street markers after April 6, 1949, (22) but it was not Toby's intention because thereof to terminate the contract in question. (24a) That Vann's sales totaled $15,396 between June 1, 1948 and April 6, 1949, (25) for which Vann paid Toby royalties of $3,079.20. (26) Vann did not pay an excess in royalties between June 1, 1948 and April 6, 1949.

On this verdict and the implied supplemental findings thereto the trial court entered the judgment hereinabove noted. After motion for new trial was overruled, Vann perfected this appeal and here assigns 54 points of error.

Vann's points 1 and 3 to 8 inclusive, in substance assert error of the court in rendering judgment for Toby, because: (1) Toby's action is founded wholly upon an illegal combination and conspiracy in restraint of trade; because there was error

(3) in overruling special exception No. 16, and (4) in permitting Toby to testify on direct examination that prior to the making of the contract in question Vann promised to market no street marker except Toby's during the life of the contract. (5) The court's error in overruling exception 10 to the charge complaining of the submission of issue 11; and (6) error in overruling the objections to submission of issue 17; (7) in overruling Vann's exceptions to Toby's pleading that before the contract was signed Vann agreed he would not market or distribute any other than Toby's marker; (8) permitting Toby to testify he would not have signed the contract but for such representation.

■ The street marker, at the times involved here, was not a patented article, but there was an application for a patent pending. There was no evidence, however, as to whether the application had or had not been finally acted upon by the Commissioner of Patents. The evidence shows the marker in question was made in molds, some of such molds being furnished by Toby, and that Toby endeavored to control, and by the patent to prohibit, the use thereof by others; that the molds and forms were part of a secret process for making the street markers not generally known to the public. The material question raised by points 1 and 3 to 8 inclusive, is whether or not the oral promise was a part of the contract, and if so, did the contract as a whole violate and was it condemned by our Anti-Trust statutes. The general rule is that if a contract is upon several material considerations, one of which is unlawful, the contract is void. Applying such rule here, if the written and oral obligations, etc., be considered together as one contract, and the oral portion is condemned by our Anti-Trust statutes, the entire contract is void. Edwards County v. Jennings, 89 Tex. 618, 35 S.W. 1053; 9 Texas Digest, Contracts, ■ Fred Miller Brewing Co. v. Coonrod, Tex.Civ.App., 230 S.W. 1099, error ref.

■ Our Anti-Trust statutes are not intended to regulate restrictions in trade, but to prohibit them entirely without regard to their immediate effect on trade. Comer v. Burton-Lingo Co., 24 Tex.Civ.App. 251, 58 S.W. 969.

■ The points 1 and 3 to 8 inclusive first attack the oral agreement made at the time of the execution of the written agreement. The oral agreement provided that Vann would market no other street markers than Toby's during the life of the written contract. It is undisputed that both parties to this proceeding are resident citizens of Texas and that the contract covered sales over the entire United States. The evidence raised the issue and the verdict thereon settled the question that the oral arrangement was intended by the parties to be a part of their contract. Not being inconsistent with the provisions of the written contract, it became a material component part of the whole contract. In this type of case the conduct and acts of the parties were admissible to show the contract void. Under our Anti-Trust statutes it is the actual conduct of the parties under the contract as a whole which controls anti-trust litigation.

Here Toby himself asserts Vann's breach of the contract, because he, Toby, found in Iowa Park, Texas, advertising of the "Royal Blue" marker by Vann which was prohibited under their agreement. Toby, by taking advantage of the provision of the oral portion of the contract to claim a breach of the written portion by Vann, now seeks to deny the oral portion as a part of their whole understanding and contract.

■ The written and oral promises and the conduct of the parties thereunder show that a material part thereof was the condition that during the term of the contract Vann would not handle or distribute any other street marker than Toby's, and Vann was to have the exclusive sales rights to Toby's street marker. Considering first the question of the exclusive sales rights granted to Vann by Toby, we are of the opinion that Toby had a secret process for the manufacture of Toby's street markers in the molds which he furnished to manufacturers designated by him under the contract, and is protected in his right *as against*

*Vann* under the rule that one who invents or discovers a secret process of manufacture " * * * whether a proper subject for a patent or not, has not an exclusive right to it as against the public, or against those who in good faith acquire knowledge of it, yet he has a property in it, which a court of chancery will protect against one who in violation of contract and breach of confidence undertakes to apply it to his own use, or to disclose it to third persons. * * *." 20 R.C.L. 1163, Patents, sec. 45; Hartman v. John D. Parks & Sons, C.C., 145 F. 358–378; Smoley v. New Jersey Zinc Co., D.C., 24 F.Supp. 294–299; Allen-Qualley Co. v. Shellmar Pro. Co., D.C., 31 F.2d 293–296; Glass v. Kottwitz, Tex.Civ. App., 297 S.W. 573, error ref.; Brown & Root v. Jaques, Tex.Civ.App., 98 S.W.2d 257; Boucher v. Wissman, Tex.Civ.App., 206 S.W.2d 101, ref. n. r. e.

 Under the above authorities Toby's grant of the exclusive sales right to Vann did not, of itself, bring this case within our statutes, arts. 7426, R.C.S., and 1632, Penal Code.

On the attack that the contract was within our statute because of the oral condition that Vann should not during the life of the contract sell any other street markers than Toby's, we have reached a different conclusion. Fuqua v. Pabst Brewing Co., 90 Tex. 298, 38 S.W. 29, 35 L.R.A. 241; 58 C.J.S., Monopolies, § 54, p. 1034; the headnote there stating: "Contracts under which a purchaser of goods is obligated not to purchase from competitors of the seller and not to sell competitors' goods are generally invalid where they substantially lessen competition." Wright v. Southern Ice Co., Tex.Civ.App., 144 S.W.2d 933, error ref.; citing the C.J.S. citation, note 95; Armstrong v. W. T. Rawleigh Medical Co., Tex. Civ.App., 178 S.W. 582; Manufacturers' Finance Corp. v. Fort Worth Paper Co., Tex.Civ.App., 68 S.W.2d 307; 14 Tex.Law Review 293 and appendix at p. 304.

It matters not that the contract was for sales of the street marker throughout the United States. The contract here violates both the Federal and our State Anti-Trust statutes. 58 C.J.S., Monopolies, § 54, p. 1035, states: "Contracts for the sale of goods, which assume to obligate the purchaser not to sell the goods of any other manufacturer than his vendor, are void under the federal anti-trust statutes where the contract may substantially lessen competition or tend to create a monopoly; but not otherwise. * * *"

Point 1 and points 3 to 8 inclusive are sustained.

Under our view of the contract, its invalidity under the Anti-Trust statute bars a recovery by either party as against the other, and therefore makes it unnecessary to consider other points which involve only matters that would, if sustained or overruled, involve only the question of whether the judgment below should be affirmed, or reversed and remanded for another trial.

For the reasons stated above and the sustaining of Vann's point 1 and points 3 to 8 inclusive, the judgment below is reversed and judgment is here rendered that Toby take nothing by this suit.

Reversed and rendered.