HYDE CORPORATION, Appellant,

v.

James Donle HUFFINES, Appellee.

No. 15813.

Court of Civil Appeals of Texas.

Fort Worth.

May 31, 1957.

Rehearing Denied June 28, 1957.

Christopher & Bailey, and M. Ward Bailey, Fort Worth, for appellant.

Thompson, Walker, Smith & Shannon, and Paul C. Cook, Fort Worth, for appellee.

BOYD, Justice.

Appellant Hyde Corporation appeals from a judgment for appellee James Donle Huffines for $17,520 for royalties on the sale of refuse compressor mechanisms, for $3,000 for attorney's fees, and for a permanent injunction restraining appellant from manufacturing or selling any device made substantially in accordance with any feature of a refuse compressor mechanism as described in an original patent application made by appellee, and in a patent.

Appellee alleged that he was the designer and inventor of a refuse compressor mechanism, which was a valuable device for vehicles used in the collection of trash and garbage; that on December 24, 1953, he filed an application in the United States Patent Office for letters patent on such device, and that patent was pending on said invention; that he was the sole owner of the invention, and the patent to issue on same, together with the plans, specifications, drawings, blueprints, and engineering data necessary to manufacture such device.

Appellee further alleged that appellant requested him to enter into a license agreement whereby appellant would have an exclusive license to manufacture and sell said device; that such license agreement was made and that appellee furnished appellant with the plans, specifications, engineering data, and technical assistance necessary to manufacture the same; that it was agreed that appellant would pay appellee a royalty of $120 per unit, and not less than $12,000 per year; that said agreement became effective April 8, 1954, and that appellant manufactured and sold the units until about May 31, 1955, when it notified appellee that it was canceling the contract.

Appellee further alleged that after the attempted cancellation of the license agreement by appellant, appellant continued to manufacture and sell said device and refused and still refuses to recognize the rights and ownership of appellee; that since May 31, 1955, appellant has manufactured and sold at least twenty-five of the units, and threatens to continue to manufacture and sell them without paying the royalty stipulated by the license agreement. He prayed for a judgment for the alleged royalties and for a permanent injunction restraining appellee from manufacturing and selling the device.

Appellant denied that appellee designed or invented any new or useful improvement in refuse compressor mechanisms, and that the principles and mechanics embodied in the mechanism which appellee alleged he invented were first conceived and designed by others, who, long prior to appellee's application for patent, had obtained patents on all the features which appellee claims he invented. Appellant further alleged that it was fraudulently induced to enter into the license agreement because it relied upon appellee's representations that he was the inventor of the mechanisms which appellant proposed to manufacture, and in truth and in fact appellee was not such inventor. It denied that it was manufacturing the device claimed to have been invented by appellee, but that appellant had purchased the patent rights of another inventor, which patent rights had been granted long prior to appellee's application for a patent, and that the device which appellant is now manufacturing is made in accordance with the features patented to said other inventor and that appellant is not using the features claimed to have been invented by appellee.

■ The jury found that: appellee disclosed his mechanism to appellant because appellant represented to him that it was interested in manufacturing and selling the device; appellant acted in good faith in acquiring knowledge of the device and

features of the device in question; the mechanism embodied new and novel features of invention which had not theretofore been applied; the device now being manufactured by appellant is substantially in accordance with, or the equivalent of, the mechanism described in appellee's original patent application, and in appellee's patent issued on June 12, 1956; appellee prosecuted his application for patent with due diligence; the mechanism described in appellee's application for patent was not faulty or worthless for the use for which it was intended; it was the intention of the parties that $12,000 would be the minimum royalty per year; the representations made by appellee and his agent, prior to the execution of the license agreement, that appellee was the sole inventor and designer of the mechanism were true; neither appellee nor his agent, prior to the execution of the agreement, warranted that a patent would forthwith issue on the mechanism; $120 per unit was a reasonable royalty; a reasonable fee for appellee's attorney would be $3,000.

Appellant seeks a reversal on sixty-five points, most of which are grouped. Primarily, the points involve the action of the court in restraining appellant from manufacturing or selling any device embodying any feature substantially in accordance with, or equivalent to, any feature of the mechanism described in appellee's original patent application as well as those described in the patent which was issued; in granting judgment for royalties on units manufactured and sold by appellant after the attempted cancellation of the license agreement; the alleged failure of the court to properly charge the jury; the failure to enter the proper judgment on the verdict; and in allowing attorney's fees.

We have carefully considered all the evidence and think it is sufficient to support the findings of the jury, with the exception of the matter of attorney's fees.

The following was shown without dispute: appellee built a refuse compressor mechanism to be used primarily in the collection of trash and garbage; he applied for a patent on the device; appellant learned of the existence of the device, and its vice-president Maxson went from its office in Fort Worth to Wichita Falls for the purpose of examining the mechanism with the view of obtaining for appellant a license agreement for manufacturing the device; appellee explained to Maxson the features of his mechanism and displayed the device mounted on a truck, and demonstrated its operation; Maxson made four or five trips to Wichita Falls to discuss with appellee the matter of a contract; appellant's chief engineer went to Wichita Falls and made sketches, measurements, and a detailed examination of the mechanism; an exclusive license agreement was prepared by appellee's attorney and was brought by Maxson to Fort Worth for consideration by appellant; it was redrafted by appellant's attorney and executed by appellant and appellee on January 8, 1954, to become effective on April 8, 1954.

The agreement provided that: appellant would manufacture and sell the units and pay appellee a royalty of $120 per unit, with a minimum royalty of $12,000 per year; the agreement might be automatically renewed at the end of the first year, so long as its conditions were being fulfilled, and such renewal provision applied to each succeeding year during the pendency of the patent application and during the life of any patent that might issue therefrom; failure to perform the conditions of the agreement after thirty days notice to the defaulting party would cause the same to become null and void; sixty days notice to terminate the contract should be given by appellant; appellee at his own expense was to prosecute his patent application with due diligence, and was to protect improvements that might be made on the mechanism; appellee would retain any trademark as his own property, appellant having the use thereof during the life of the contract; and appellant agreed not to question the validity of any application for

patent or any patent issued on the device or any improvements thereon.

■ Appellee testified that the units which appellant continued to manufacture and sell after the termination of the agreement were substantially in accordance with the features disclosed in the patent application and in the patent finally issued thereon. This testimony was in considerable detail and was corroborated to a large extent by the witness Schley. Appellee further testified that he was the inventor of the mechanism and the owner of the invention, and that it contained new, novel, and useful features which had not been theretofore applied; that he came to Fort Worth and assisted appellant in beginning the manufacture of the units, furnishing technical advice and aid; and that he furnished appellant with drawings, plans, and specifications of the mechanism. There was evidence by appellant's witnesses that before the termination of the license agreement it had abandoned substantially all of appellee's claimed novel features, and was not incorporating them in the mechanisms now being manufactured and sold. This was a jury issue, and we are bound by the jury's finding.

Appellant contends that as there was no express agreement that the disclosures made by appellee to appellant during and after the negotiations for the contract were made in confidence, and since the jury found that appellant "acted in good faith" in acquiring knowledge from appellee of the mechanism, appellee was not entitled to an injunction restraining appellant from making a device substantially embodying the features of appellee's mechanism, and was not entitled to any royalties for bodies manufactured and sold by appellant after the contract was terminated. We cannot agree with this contention.

■ If the disclosures were made because appellant represented to appellee that it was interested in a contract to manufacture and sell the device, there need be no express stipulation that they were made "in confidence" in order to subject appellant to damages and an injunction if it used the features of the device so disclosed to it. Allen-Qualley Co. v. Shellmar Products Co., D.C., 31 F.2d 293; Shellmar Products Co. v. Allen-Qualley Co., 7 Cir., 36 F.2d 623; Saco-Lowell Shops v. Reynolds, 4 Cir., 141 F.2d 587; Smith v. Dravo Corp., 7 Cir., 203 F.2d 369; Hoeltke v. C. M. Kemp Mfg. Co., 4 Cir., 80 F.2d 912; E. I. Du Pont De Nemours Powder Co. v. Masland, 244 U.S. 100, 37 S.Ct. 575, 61 L.Ed. 1016; E. L. Bruce Co. v. Bradley Lumber Co. of Arkansas, D.C., 79 F.Supp. 176; International Industries, Inc., v. Warren Petroleum Corp., D.C., 99 F.Supp. 907; Sbicca-Del Mac, Inc., v. Milius Shoe Co., 8 Cir., 145 F.2d 389; Booth v. Stutz Motor Car Co. of America, Inc., 7 Cir., 56 F.2d 962; A. O. Smith Corporation v. Petroleum Iron Works Co. of Ohio, 6 Cir., 73 F.2d 531; Vann v. Toby, Tex.Civ. App., 260 S.W.2d 114; 20 R.C.L. 1163; Glass v. Kottwitz, Tex.Civ.App., 297 S.W. 573, writ refused.

In Allen-Qualley Co. v. Shellmar Products Co., D.C., 31 F.2d 293, 296, the court said: "It is well established that equity will enjoin the use and disclosure of trade secrets, such as processes, formulæ, and inventions learned in confidence. * * * It is apparent that it is immaterial in exercising this particular jurisdiction of equity, so far as the immediate parties are concerned, whether there is a valid patent owned by plaintiff or not. The basis for the jurisdiction is that the inventor is not required to apply for a patent, but is entitled to a protection of his process and device against a publication thereof and the misuse thereof by one who is guilty of a violation of trust and confidence."

The license agreement provided that its effective date would be the date on which appellant should furnish a pilot model of the device made "in accordance with the disclosure of said patent application, and when such pilot model is accepted by Licensor as a proper and salable article

of manufacture within the scope of the claims of said application," and appellant says that such model had not been furnished by it, and that no such model had been accepted by appellee. Some kind of a model was furnished, and it was accepted by appellee by letter dated March 26, 1954. Appellant must have considered the contract in effect, because it began the manufacture and sale of the mechanism and began paying the royalties to appellee as stipulated in the agreement. If there was not a strict compliance with this requirement, it appears to have been waived.

While several of the claims in appellee's application for a patent were rejected, a patent was finally issued and was received by appellee during the progress of the trial. Appellee and his attorney testified as to their work in prosecuting the application, and the delays they experienced. There is no indication in the evidence that they were lacking in good faith efforts; and the jury was warranted in finding that the application was prosecuted with due diligence.

Although there was evidence to support appellant's contention that the device was not workable and was practically useless as a refuse compressor, there was evidence to the contrary. Without setting it out, we hold that it was sufficient to support the finding that the device was not faulty or worthless for the use for which it was intended.

What we have already said sufficiently disposes of appellant's point that appellee was not entitled to recover royalties on the units it manufactured and sold after the termination of the license agreement. Under the authorities heretofore cited, we think appellant could not continue to use appellee's device or its essential features after the contract was terminated without paying damages, and the stipulated royalties under the contract could serve as the measure of appellee's recovery. Saco-Lowell Shops v. Reynolds, 4 Cir., 141 F.2d 587; Sbicca-Del Mac, Inc., v. Milius Shoe Co., 8 Cir., 145 F.2d 389.

Another point for reversal is that the trial court was without jurisdiction to grant injunctive relief because after the patent was introduced in evidence that part of the suit related to the construction of such patent and matters relating to the infringement thereof, and that such jurisdiction is exclusively in the Federal courts.

We do not think that this is a "patent case." There is a distinction between a patent case and a case where patent "questions" have arisen. State courts have jurisdiction to determine patent "questions" which arise in the course of a trial properly maintainable in the state court. Becher v. Contoure Laboratories, Inc., 279 U.S. 388, 49 S.Ct. 356, 73 L.Ed. 752; Pratt v. Paris Gaslight & Coke Co., 168 U.S. 255, 18 S.Ct. 62, 42 L.Ed. 458; H. J. Heinz Co. v. Owens, 9 Cir., 189 F.2d 505; H. J. Heinz Co. v. Superior Court in and for Alameda County, 42 Cal.2d 164, 266 P.2d 5; Luckett v. Delpark, Inc., 270 U.S. 496, 46 S.Ct. 397, 70 L.Ed. 703; Sbicca-Del Mac, Inc., v. Milius Shoe Co., 8 Cir., 145 F.2d 389. This point is overruled.

We sustain appellant's contention that attorney's fees are not recoverable in this case. Appellee cites Title 35 U.S.C.A., "Remedies for Infringement of Patent, and other Actions," sec. 285, wherein it is provided that in exceptional cases the court may allow attorney's fees. Appellee's argument is that generally a state court may grant relief authorized by Federal statute unless that power is forbidden by Congress. The legislation permitting an award of attorney's fees in "exceptional cases" is confined to patent litigation. As we have already pointed out, the case at bar is not a patent case. Since under the statutes of this state no attorney's fees are recoverable in such a case as this, we cannot extend the

Federal statute applying to patent cases to cover the case at bar. For comments on the history and applicability of said section 285, see Associated Plastics Companies, Inc., v. Gits Molding Corp., 7 Cir., 182 F.2d 1000; Juniper Mills, Inc., v. J. W. Landenberger & Co., D. C., 6 F.R.D. 463; Pennsylvania Crusher Co. v. Bethlehem Steel Co., 3 Cir., 193 F.2d 445. Moreover, there was no finding of facts showing this to be an exceptional case. Appellant objected to the charge because such issues were omitted, and tendered proper issues on that point. Even if the statute is applicable here, we think the factual basis is lacking in the verdict. Laufenberg, Inc., v. Goldblatt Bros., Inc., 7 Cir., 187 F.2d 823; Park-In Theatres, Inc., v. Perkins, 9 Cir., 190 F.2d 137.

We do not extend an already lengthy opinion to discuss severally the other points of error; but we have considered them all and do not believe that reversible error is shown.

The judgment is reformed to eliminate the $3,000 recovery for attorney's fees; and, as reformed, the judgment is affirmed.

The costs of the appeal are adjudged one-half to appellant and one-half to appellee.

Reformed and affirmed.

RENFRO, J., concurs in part and dissents in part.

RENFRO, Justice (concurring in part and dissenting in part).

I concur with the majority in reversing and rendering that part of the judgment which allowed appellee $3,000 attorney's fees.

I would also reverse and render that part of the judgment which permanently enjoins appellant from manufacturing or selling any device embodying any feature substantially in accordance with, or equivalent to, any feature of the mechanism described in appellee's original patent application.