Mr. Walter Umphrey Chairman Texas Aeronautics Commission P.O. Box 12607 Austin, Texas 78711
Re: Whether a county or municipality may lease airport property exclusively to one person
Dear Mr. Umphrey:
You have informed us that the Texas Aeronautics Commission has received several complaints from members of the public regarding competitive access to Texas airports receiving both state and federal funds. These concerns have entailed the leasing of property by a county to be used for aircraft hangering and other aviation related activities at county-owned airports. You also inform us that it is the policy of the Texas Aeronautics Commission to enter into contracts with county recipients of state funds permitting the release of the funds in exchange for their compliance with certain terms and conditions. Included among these terms and conditions are the requirement that the county comply with federal and state laws, and the prohibition that the county not grant exclusive rights to conduct any aeronautical activities in a discriminatory manner.
You ask five specific questions regarding these facts, one of which refers to a specific lease agreement. The answer to that question requires the evaluation and resolution of factual issues for which the opinion process established under article 4399, V.T.C.S., is not appropriate. See, e.g., Attorney General Opinions JM-531, JM-486 (1986); JM-394 (1985). However, we will offer some guidance in relation to questions in which strictly legal issues are involved. The questions we will answer are as follows:
 1. May a county or a municipality lease airport property exclusively to one airport lessee, and if so, does such an agreement constitute a violation of section 308(a) of Title 49, U.S.C.?
 2. Does the attorney general have enforcement authority to require compliance and seek penalties for the obligations included in the grant agreements between the Texas Aeronautics Commission and an airport sponsor pursuant to article 46c-8 of the Texas Aeronautics Act, and Aviation Facilities Development Rule 65.19?
 3. Does the granting of an exclusive airport lease by a county or municipality receiving state funds constitute a violation of section 15.05(a) or (b) of the Texas Free Enterprise and Antitrust Act of 1983?
 4. Does the granting of an exclusive lease by a county or a municipality contrary to the provisions of state law make the agreement void as a matter of `public policy' under Texas law?
The first question has two parts. The first part is whether a county or municipality may lease airport property exclusively to one airport lessee. The second part is whether such an agreement violates section 1349(a) of Title 49, U.S.C. § 1.E of article 1269h, V.T.C.S., grants a county or municipality the power to lease "all or any part of any airport or other property connected therewith" to any person, firm or corporation. See V.T.C.S. art. 1269h, § 1.E. Thus, the statute specifically grants a county or municipality the authority to acquire land and to operate airports and to lease all or portions of the property of the same to private individuals or corporations. See V.T.C.S. art. 1269h, §§ 1.A, 1.E. However, if an airport has used federal funds to enhance its facilities, section 1349(a) of Title 49 is applicable. This section prohibits the county or municipality from granting a lease agreement which has the effect of granting an exclusive right to use facilities to a lessee, rendering it noncompetitive with other potential lessees.
Section 1349(a) of Title 49, is now a part of the Federal Aviation Act of 1958. H.R. No. 2360, 85th Cong., 2d Sess., reprinted in 1958 U.S. Code Cong. Ad.News 855, 855-946; see also City of Pompano Beach v. F.A.A., 774 F.2d 1529 (11th Cir. 1985). It provides generally that federal funds may not be expended for the maintenance or operation of air navigation facilities, except upon written recommendation and certification by the Secretary of Transportation. The statute also provides that "[t]here shall be no exclusive right for the use of any landing areas or air navigation facility upon which federal funds have been expended." 49 U.S.C. § 1349(a) (1982).
In order to evaluate whether a lease agreement containing an "exclusive right" for the use of any air navigation facility violates section 1349(a), the commission, through its investigative and hearing powers, must determine whether such a restrictive agreement is consistent with the purpose of the provision to prohibit monopolies and to promote and encourage competition. See V.T.C.S. art. 46c-8; art. 46c-6, subdiv. 7. The commission must consider whether the county has allowed other parties the opportunity to negotiate and compete for the same right to provide the services rendered on similar terms and conditions. See City of Pompano Beach v. F.A.A., 774 F.2d 1529
(11th Cir. 1985); Niswonger v. American Aviation, Inc.,411 F. Supp. 769 (E.D.Tenn. 1975).
In response to your second question, the attorney general has the enforcement authority under article 46c-8, V.T.C.S., to require compliance and seek penalties for the obligations included in grant agreements between the commission and a county or a city. Subdivision 10(a) of article 46c-6, V.T.C.S., grants the commission the authority to provide funds, through loan agreements or grant contracts, to counties for the establishment, construction, reconstruction, enlargement or repair of airports, airstrips or air navigational facilities. See V.T.C.S. art. 46c-6, § 10(a). The expenditure of the grant funds by a county is limited to these purposes. Id.
Article 46c-8, V.T.C.S., provides:
 The Commission is authorized to enforce the provisions of this Act, by revocation or suspension of any lease or permit; in the event of violation of this Act, the Commission shall notify the Attorney General thereof, who is authorized to enforce the same by bringing a suit in any of the district courts of the county of the residence of the defendant in such action, and any such court may enforce the same by injunction or other appropriate legal process. (Emphasis added).
Id. Therefore, if a county violates a grant agreement with the commission, the attorney general is authorized under article 46c-8, V.T.C.S., to seek compliance and enforce the same. See also 43 T.A.C. § 65.19(a) (1976).
As indicated above, it is the policy of the commission to include within any agreement with a county or city provisions which prohibit the governmental body from granting any exclusive rights to conduct any aeronautical activity and from practicing discrimination in granting access to conduct any aeronautical activity at the airport. Whether a particular city or county has violated this agreement is a factual matter which the commission is authorized to decide. See V.T.C.S. arts. 46c-8; art. 46c-6, subdiv. 7. The commission must take into consideration the reasonableness of the terms and conditions made available or offered to all persons or business entities seeking to provide the particular service or conducting the particular activity. These considerations are consistent with the purpose of the commission to provide for the best interest of the public. See V.T.C.S. art. 46c-2.
Your next question is concerned with the potential liability of a county or municipality under section 15.05(a) or (b) of the Texas Free Enterprise and Antitrust Act of 1983. See Tex.Bus. Comm. Code § 15.05(a), (b). This office has held that section 15.21(a)(1) of the act grants immunity to both counties and cities under the act. See Attorney General Opinion JM-404 (1985). Therefore, both entities are immune from prosecution under the act. But see15 U.S.C. § 1 et seq. (Sherman Antitrust Act); 15 U.S.C. § 15 (Clayton Act).
Finally, you ask whether the granting of an exclusive lease by a county or a municipality contrary to the provisions of state law make the agreement void against public policy under Texas law. If a contract is in violation of state law, the general rule in Texas is that the contract is void. See Vann v. Toby,260 S.W.2d 114 (Tex.Civ.App.-Dallas 1953, writ ref'd n.r.e.); see also 14 Tex.Jur.3d Contracts § 141 (1981). In addition, contracts which violate public policy are also void and unenforceable. See 14 Tex.Jur.3d Contracts § 140 (1981). As a general rule in this state, a contract against public policy is generally defined as a provision or stipulation which is illegal or which is inconsistent with or contrary to the best interest of the public. See Locomotive Engineers Conductors Mutual Protective Assn. v. Bush, 576 S.W.2d 887 (Tex.Civ.App.-Tyler 1979, no writ). Thus, if an exclusive agreement violates state law it is necessarily void regardless of the fact it may be in the best interest of the public.
 SUMMARY
Section 1349(a) of Title 49, United States Code, as amended, is violated only when it is applied so as to limit a county or municipality from granting a lease agreement which has the effect of granting an exclusive right of a particular airport service to a lessee and rendering it noncompetitive with other potential lessees.
The attorney general has enforcement authority under article 46c-8, V.T.C.S., to require compliance and seek penalties for obligations included in grant agreements between the Texas Aeronautic Commission and a county or city.
Section 15.21(a)(1) of the Business and Commerce Code grants immunity to both cities and counties under the Texas Free Enterprise and Antitrust Act of 1983.
An exclusive contract which violates either federal or state law is unenforceable.
Very truly yours,
 Jim Mattox Attorney General of Texas
 Jack Hightower First Assistant Attorney General
 Mary Keller Executive Assistant Attorney General
 Rick Gilpin Chairman, Opinion Committee
 Prepared by Tony Guillory Assistant Attorney General